# EXHIBIT B-5

# Prison Rape Elimination Act (PREA) Audit Report
## Adult Prisons & Jails

☐ Interim   ☒ Final

**Date of Report**   May 29, 2019

## Auditor Information

| | | | |
|---|---|---|---|
| **Name:** Diane Lee | | **Email:** diane.lee@nakamotogroup.com | |
| **Company Name:** The Nakamoto Group, Inc. | | | |
| **Mailing Address:** 11820 Parklawn Dr., Suite 240 | | **City, State, Zip:** Rockville, MD 20852 | |
| **Telephone:** 240-357-3162 | | **Date of Facility Visit:** May 14-16, 2019 | |

## Agency Information

| | |
|---|---|
| **Name of Agency:** Federal Bureau of Prisons (BOP) | **Governing Authority or Parent Agency** *(If Applicable)*: U.S. Department of Justice (DOJ) |
| **Physical Address:** 320 First St., NW | **City, State, Zip:** Washington, DC 20534 |
| **Mailing Address:** 320 First St., NW | **City, State, Zip:** Washington, DC 20534 |
| **Telephone:** 202-307-3198 | **Is Agency accredited by any organization?** ☒ Yes  ☐ No |

| The Agency Is: | ☐ Military | ☐ Private for Profit | ☐ Private not for Profit |
|---|---|---|---|
| ☐ Municipal | ☐ County | ☐ State | ☒ Federal |

**Agency mission:**   The mission of the Federal Bureau of Prisons is to protect society by confining offenders in the controlled environments of prisons and community-based facilities that are safe, humane, cost-efficient and appropriately secure, and that provide work and other self-improvement opportunities to assist offenders in becoming law-abiding citizens.

**Agency Website with PREA Information:**   www.bop.gov/inmates/custody_and_care/sexual_abuse_prevention.jsp

## Agency Chief Executive Officer

| | |
|---|---|
| **Name:** Hugh Hurwitz | **Title:** Acting   Director |
| **Email:** BOP-CPD/PREACOORDINATOR@BOP.GOV | **Telephone:** 202-616-2112 |

## Agency-Wide PREA Coordinator

| | |
|---|---|
| **Name:** Jill Roth | **Title:** National PREA Coordinator |
| **Email:** BOP-CPD/PREACOORDINATOR@BOP.GOV | **Telephone:** 202-616-2112 |

| PREA Coordinator Reports to: James C. Wills, Acting Assistant Director, Reentry Services Division | Number of Compliance Managers who report to the PREA Coordinator    None |
|---|---|

## Facility Information

| | |
|---|---|
| **Name of Facility:** | FCC Terre Haute |
| **Physical Address:** | Federal Correctional Institution 4200 Bureau Road North, Terre Haute, IN 47808 |
| **Mailing Address (if different than above):** | same as above |
| **Telephone Number:** | USP 812-244-4400, FCI 812-238-1531 |

| The Facility Is: | ☐ Military | ☐ Private for profit | ☐ Private not for profit |
|---|---|---|---|
| ☐ Municipal | ☐ County | ☐ State | ☒ Federal |

| Facility Type: | | ☐ Jail | ☒ Prison |
|---|---|---|---|

**Facility Mission:** Maximize our agency's value through world-class correctional practices through continually striving for excellence in our profession, ensuring the safety of our staff and the success of the inmates in our care and custody by providing a positive correctional environment, quality reentry programs and pro-active prison management practices and/or strategies, and through the utilization of BEST (Better Communication, Empowerment of Staff, Staff Training and Development, and Transparent Leadership).

**Facility Website with PREA Information:**
https://www.bop.gov/inmates/custody_and_care/sexual_abuse_prevention.jsp

## Warden/Superintendent

| **Name:** | Thomas Watson | **Title:** | Complex Warden |
|---|---|---|---|
| **Email:** | THP/PREAComplianceMgr@bop.gov | **Telephone:** | 812-244-4400 |

## Facility PREA Compliance Manager

| **Name:** | Michael C. Underwood | **Title:** | Associate Warden |
|---|---|---|---|
| **Email:** | THP/PREAComplianceMgr@bop.gov | **Telephone:** | 812-244-4400 |

## Facility Health Service Administrator

| **Name:** | Christopher McCoy | **Title:** | Health Services Administrator |
|---|---|---|---|
| **Email:** | THP/PREAComplianceMgr@bop.gov | **Telephone:** | 812-244-4400 |

## Facility Characteristics

| **Designated Facility Capacity:** 2111 | **Current Population of Facility:** 2674 |
|---|---|

| Number of inmates admitted to facility during the past 12 months | 477 |
|---|---|
| Number of inmates admitted to facility during the past 12 months whose length of stay in the facility was for 30 days or more: | 477 |

| | |
|---|---|
| Number of inmates admitted to facility during the past 12 months whose length of stay in the facility was for 72 hours or more: | 477 |
| Number of inmates on date of audit who were admitted to facility prior to August 20, 2012: | 45 |

| Age Range of Population: | Youthful Inmates Under 18: 0 | Adults: 20-89 | |
|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Are youthful inmates housed separately from the adult population? | ☐ Yes | ☐ No | ☒ NA | |

| | |
|---|---|
| Number of youthful inmates housed at this facility during the past 12 months: | 0 |
| Average length of stay or time under supervision: | 156 months |
| Facility security level/inmate custody levels: | Minimum, Medium and High / In, Out, Maximum |
| Number of staff currently employed by the facility who may have contact with inmates: | 708 |
| Number of staff hired by the facility during the past 12 months who may have contact with inmates: | 20 plus 4 interns |
| Number of contracts in the past 12 months for services with contractors who may have contact with inmates: | 23 |

### Physical Plant

| | |
|---|---|
| Number of Buildings: 90 | Number of Single Cell Housing Units: 2 |

| | |
|---|---|
| Number of Multiple Occupancy Cell Housing Units: | 22 |
| Number of Open Bay/Dorm Housing Units: | 9 |
| Number of Segregation Cells (Administrative and Disciplinary: | 226 |

Description of any video or electronic monitoring technology (including any relevant information about where cameras are placed, where the control room is, retention of video, etc.): FCC Terre Haute employs a video camera system for video surveillance. Cameras are placed strategically throughout the complex to ensure the safety and security of both inmates and staff.

### Medical

| | |
|---|---|
| Type of Medical Facility: | Care Level 3 |
| Forensic sexual assault medical exams are conducted at: | Union Hospital |

### Other

| | |
|---|---|
| Number of volunteers and individual contractors, who may have contact with inmates, currently authorized to enter the facility: | 160 |
| Number of investigators the agency currently employs to investigate allegations of sexual abuse: | 253 |

# Audit Findings

## Audit Narrative

*The auditor's description of the audit methodology should include a detailed description of the following processes during the pre-onsite audit, onsite audit, and post-audit phases: documents and files reviewed, discussions and types of interviews conducted, number of days spent on-site, observations made during the site-review, and a detailed description of any follow-up work conducted during the post-audit phase. The narrative should describe the techniques the auditor used to sample documentation and select interviewees, and the auditor's process for the site review.*

**Pre-Audit Preparation**

Prior to the on-site visit, a representative from the External Auditing Branch, Program Review Division of the BOP, conducted an on-site "pre-audit" of the complex to ensure PREA compliance. Prior to the on-site visit, the External Audit Branch representative, Program Review Division forwarded Agency and Complex policies and supporting documentation, including the completed Pre-Audit Questionnaire, administrative reports, contracts, incident reports, memorandums, policies, brochures, staff rosters, PREA audit notices, staffing plans, training information, and other reference materials for examination. The agency Head and agency PREA Coordinator were previously interviewed. The Lead Auditor contacted victims advocates at Just Detention International and the local Council on Domestic Abuse, Inc. Neither agency has any concerns over facilitating services for victims of sexual assault.

The FCC had the following internal audits over the last three years: Program Reviews in Psychology 07/2016, Human Resources/Affirmative Employment 08/2016, Religious Services 10/2016, Financial Management/Trust Fund 01/2017, Education/Recreation 03/2017, Correctional Programs 09/2017, Health Services 10/2017, Environmental and Safety Compliance 11/2017, Information Technology 03/2018, Facilities 06/2018, Correctional Services 08/2018, and Food Service 04/2019; and Operational Reviews in Correctional Services 11/2016, Health Services 11/2016, Environmental and Safety Compliance 02/2017, Correctional Programs 03/2017, Information Technology 03/2017, PREA 03/2017, UNICOR 06/2017, Facilities 07/2017, Psychology 08/2017, Human Resources/Affirmative Employment 08/2017, and Correctional Programs 09/2018. They also had the following Institution Reviews/Accreditations: ACA Accreditation 01/2017, Institution Character Profile (ICP) 07/2016, Environmental Management Systems (EMS), 2nd Party Certification Audit 09/2016, DC Corrections Information Council 09/2016, and Accreditation Association for Ambulatory Health Care, Inc. (AAAHC) 07/2017.

**<u>Entrance Briefing and Tour</u>**

The on-site visit for the PREA (Prison Rape Elimination Act) compliance audit of Federal Correctional Complex (FCC) Terre Haute was conducted May 14-16, 2019 by The Nakamoto Group, Inc. certified auditors Diane Lee (Lead), Robert Manville, and Glynn Maddox (for the first two days). This is the second PREA audit for this complex. Upon arrival at the complex, an in-briefing meeting was held with the Complex Warden, FCI Warden, three Associate Wardens, Executive Assistant, Complex Captain, Camp Administrator, Acting FCI Captain, Case Management Coordinator, Unit Manager, Business Administrator, Environmental and Safety Compliance Manager, two American Correctional Association (ACA) Auditors and

several representatives from the BOP Program Review Division. The standards used for this audit became effective August 20, 2012.   As part of the audit, a review of all agency and local complex PREA policies was conducted, staff and inmates were interviewed, and a tour of the complex was conducted.  FCC Terre Haute is comprised of a United States Penitentiary (USP) a high security level complex, a Federal Correctional Institution (FCI) a medium security level complex, and a Satellite Prison Camp (SCP), a minimum-security component.

The tour of FCC included the intake processing areas, all housing units, as well as the Special Housing Units (SHU), the Health Services Department, Recreation, Food Service, complex support areas, Education, visiting rooms, UNICOR, and programming areas.  During the tour, it was noted that there was sufficient staffing to ensure a safe environment for inmates and staff. The auditors observed among other things the facilities configurations, location of cameras, staff supervision of offenders, housing configurations (including shower/toilet areas), placement of posters, PREA informational resources, security monitoring, offender entrance and search procedures, and offender programming.  Modifications that have been made throughout the complex were pointed out during the tour including areas where blind spots were closed off and additional mirrors were added. Signs were posted (in English and Spanish) that indicated employees of the opposite gender were present in the housing units. Inmates were able to shower, dress, and use the toilet facilities without exposing themselves to employees of the opposite gender. Postings, regarding PREA violation reporting and the agency's zero-tolerance policy toward sexual abuse and sexual harassment, were prominently displayed in all housing units, meeting areas and throughout the complex.  Audit notice postings with the PREA auditor's contact information were located in the same areas. These notices were posted March 1, 2019. The auditor received correspondence from three inmates. File sampling was conducted in the human resources, training, classification, and investigative sections.  Documents related to background investigations for new staff as well as staff considered for promotions were reviewed. PREA training documentation for staff, volunteers, and contractors were reviewed. Classification documents were reviewed to assess propensity for sexual victimization or abusiveness. Files related to referrals for mental health follow-up were reviewed.

## Staff-Inmate Interviews

The auditors talked informally to staff and offenders during walk-throughs of the facilities during the visit.  We requested a listing of offenders by housing units and randomly selected inmates from each housing area as well as any inmates who were limited English proficient (LEP) or had hearing/vision impairment to be in interviewed.  In addition, we requested to interview any LBGTI self-identified inmates.  Interviews were scheduled for inmates as well as staff, both random and specialized.  Staff interviews were conducted on all shifts utilizing staffing rosters. There were 58 inmates formally interviewed. These included four physically disabled, two mentally disabled, seven victims of sexual abuse discovered during intake screening, four who reported sexual abuse, five limited English proficient (LEP), (Spanish), six who self-identified as transgender, three who self-identified as gay, one in Communications Management Unit and two in Special Confinement Unit.

A total of 35 staff were formally interviewed, including 20 correctional officers, from all three shifts. Specialized staff interviewed included the Complex Warden, Associate Warden of Custody/Institution PREA Compliance Manager, Human Resource Manager, Acting Chief Psychologist, Special Investigative Services Lieutenant, Health Services Administrator, two unit managers, Case Management Coordinator, two additional Psychologists, Reentry Coordinator and two contract staff.

The auditors concluded, through interviews and the review of policies and documentation, that all staff and inmates were very knowledgeable concerning their responsibilities involving PREA. During the interviews, the inmates acknowledged that they received information about the complex's zero-tolerance policy against sexual abuse upon their arrival to the complex, that staff were respectful and that they felt safe at the complex. Staff were able to describe in detail their specific duties and responsibilities, including being a "first responder", if an incident occurred or an allegation of sexual abuse/sexual harassment was made.

## Investigations

During the current auditing period, there were a total of 44 reported allegations of sexual abuse/harassment. Three of these cases are still open. Of the closed cases, one was found to be substantiated, 34 were unsubstantiated and six were unfounded. The auditors reviewed 17 of the 44 investigation files. The auditor reviewed the sexual abuse allegations and all pertinent documentation related to the allegations. All allegations were found to be appropriately investigated and adjudicated in accordance with the PREA standards.

## Facility Characteristics

*The auditor's description of the audited facility should include details about the facility type, demographics and size of the inmate, resident or detainee population, numbers and type of staff positions, configuration and layout of the facility, numbers of housing units, description of housing units including any special housing units, a description of programs and services, including food service and recreation. The auditor should describe how these details are relevant to PREA implementation and compliance.*

FCC Terre Haute is comprised of a United States Penitentiary (USP) a high security complex, a Federal Correctional Institution (FCI) a medium level complex, and a Satellite Prison Camp (SCP), a minimum-security level complex. These facilities, consisting of 90 buildings, combined with the Federal Bureau of Prisons' National Bus Center, are situated on approximately1,200 acres of land in Terre Haute, Indiana consisting of 90 buildings. The complex is located approximately 70 miles from Indianapolis, Indiana or a little over one hour, and two miles south of Terre Haute. The main entrance is from the east off of US 63 to Bureau Road which leads into the complex. To the north is the FCI, in the middle is the SCP and the National Bus Center, and on the southern end of the complex is the USP. Additionally, within the complex acreage are the weapons range, training center, maintenance buildings, garage, power house, warehouses, UNICOR warehouses, execution complex, and staff housing.

FCC Terre Haute's United States Penitentiary (USP) was activated in March 2005. This 719,000 square-foot complex has a rated capacity of 910 with six housing units.

Additionally, USP Terre Haute contains the Special Confinement Unit, which houses inmates who have received a sentence of Death in the Federal Court system, with a rated capacity of 50 single housing cells. Inmates housing units provide space for seating areas, computer access, along with Leisure and Law Library access services. The complex has dining and kitchen facilities, Health Services, Maintenance Shops, Commissary, UNICOR Factory, and an inmate visiting area. Institution buildings are set up in a square shape with a large interior yard to accommodate inmates recreational needs. The six general population units are designed in a bow tie design, with two floors. The right and left sides of the complex houses the program areas, Health Services, UNICOR, Education, Food Service, Visiting areas and Religious Services. Terre Haute Cut & Sew Factory specializes in the making of clothing for the United States Armed Services which employs 180 inmates. The Life Connections Program (LCP) is an 18-month, faith-based, residential program designed to improve an inmate's institutional adjustment and societal integration. The Challenge Program is a voluntary, residential program designed to meet the treatment needs of the Bureau's high security inmates. The program encourages a  healthy and crime-free approach to life. It encompasses group and individual treatment in the residential environment, accumulating a minimum of 500 hours of treatment over the course of at least nine months.

The Federal Correctional Institution, formally known as USP Terre Haute, is now a medium security level complex. The original structure was built in 1940, and was the first federal penitentiary constructed without an exterior brick wall. The architectural design is referred to as a modified "telephone pole" style, with all housing units and other offices/areas opening into a long corridor. The complex consists of ten housing units and has a rated capacity of 560. FCI Terre Haute houses a STAGES Unit with a rated capacity of 48, an RDAP unit with a rated capacity of 96, as well as a Communications Management Unit with a rated capacity of 50 inmates. Along with the USP, FCI has dining and kitchen facilities, Health Services, Maintenance Shops, Commissary, UNICOR Factory, and an inmate visiting area. It also includes education, recreation, religious and institutional programs. Psychology-based programs and counseling services are provided to all inmates in the complex. The UNICOR Textile Mill (THTM) provides high-quality textiles for many Federal Agencies. They currently employ 10 staff members and 200 inmates.

The STAGES Program is dedicated to improving the quality of life in inmates who use self-harm as means to adjust to prison or have displayed very poor adjustment to prison as a result of characterological problems, by serving the psychological, educational, vocational, and recreational needs of inmates.  STAGES is a unit-based residential Psychology Treatment Program that provides treatment to Care Level 3 Mental Health, Psych Alert, male inmates with a primary diagnosis of Borderline Personality Disorder. The typical STAGES inmate has the following behavioral characteristics: history of long-term SHU placement, multiple incident reports, self-harm behavior, emotional regulation problems, history of suicide watches, and a pattern of behavior disruptive to the institution. Participants must volunteer for treatment and be willing to engage in the treatment process.

The Satellite Prison Camp was constructed in 1960 and has the presence and layout of a small college campus. The main building includes inmate living quarters, a dining room and gymnasium. Adjacent buildings include a UNICOR warehouse, Chapel, educational and vocational training areas and the Bureau's National Bus Center. The camp has

eight dormitory-style housing units that consist of two-man, eight-man, and 12-man rooms and has a rated capacity of 324. The dorms provide furnishings consistent with tables, chairs, televisions, and shower areas. There are also Health Services, Religious Services, and a number of psychology-based programs and counseling services. Inmates within the camp provide support to the adjacent facilities. This includes janitorial support, grounds maintenance, and maintenance support. The complex offers a variety of educational opportunities, as well as vocational training in small engine repair, electronics, and diesel engine mechanics.

FCC Terre Haute is Care Level 3 medical and mental health complex. This means inmates with significant medical and psychiatric issues are designated to this complex. Due to the high co-morbidity rate, this category of inmates require significant amounts of clinical intervention from medical and psychology staff as their serious medical concerns can negatively impact their mental status while conversely; their psychiatric conditions can exacerbate their medical conditions.

## Summary of Audit Findings

*The summary should include the number of standards exceeded, number of standards met, and number of standards not met, **along with a list of each of the standards in each category**. If relevant, provide a summarized description of the corrective action plan, including deficiencies observed, recommendations made, actions taken by the agency, relevant timelines, and methods used by the auditor to reassess compliance.*

Through formal and informal interviews with staff, contractors and inmates and review of policy and documentation, it was evident that FCC Terre Haute has an effective program in place to effectively educate all concerned in the zero-tolerance policy against sexual abuse. During the audit, a curtain was added for a toilet in the Reception area holding room to provide additional privacy for the inmates. FCC Terre Haute employs a video camera system for video surveillance. Cameras are placed strategically throughout the complex to ensure the safety and security of both inmates and staff. There are plans to add several new cameras to continue to improve the safety and security. The auditor found the staff and inmates to be very aware of PREA. The staff were very knowledgeable about their responsibilities to ensure a safe environment. They were aware of reporting responsibilities, preservation of evidence, as well as dealing with victims of sexual assault and/or sexual harassment. The staff has all had extensive training on how to identify signs of sexual assault/harassment and how to deal and treat victims of sexual assault and/or sexual harassment.

Upon completion of the on-site visit, an exit briefing was held to discuss the audit findings. This briefing was held in the administrative conference room with the Complex Warden; the Associate Warden of Custody/ICPM; the Management Analyst from the ACA/PREA Audit Section, Program Review Division and several department heads. The auditor had been provided with extensive files prior to and during the audit for review to support a conclusion of compliance with the PREA. There are adequate limits to cross-gender viewing and searches. The complex has adaptive measures in place to ensure disabled and LEP inmates can participate in and benefit from all aspects of the PREA process. Hiring and promotion practices are consistent with sexual abuse safety measures. The complex has appropriate medical and

victim advocacy networks in place and available, as needed. PREA education and training is documented. Inmates acknowledged the admissions screening process included questions regarding any history of sexual abuse or victimization and whether they would like to identify a sexual preference. Intake, classification assessment and medical/mental health processes are efficient and seamless in addressing referrals based on victimization or abusiveness screening data. Related supporting documentation is organized and stored in information systems available on a need-to-know basis. Reporting mechanisms are displayed in a conspicuous manner and inmates and staff members are aware of all reporting methods available to them. Systems are in place for coordinated responses to incidents of sexual abuse, as needed. The complex also has sufficiently trained personnel who conduct administrative investigations. The Special Investigative Services (SIS) Unit conducts administrative investigations. The Federal Bureau of Investigation (FBI) and the Office of the Inspector General (OIG) conduct criminal investigations.

Staff indicated adequate training in all aspects of the PREA, particularly First Responder duties or actions to be taken in the event of a reported sexual abuse related incident. All interviews and observations also supported compliance. The complex staff were found to be cooperative and professional. Staff morale appeared to be very good and the observed staff/inmate relationships were determined to be good. All areas of the complex were observed to be clean and well maintained. The auditors thanked the Complex Warden and staff for their hard work and dedication to the PREA audit process.

***Auditor Note:*** *No standard should be found to be "Not Applicable" or "NA". A compliance determination must be made for each standard.*

**Number of Standards Exceeded:**          3

- §115.11; §115.41; §115.83

**Number of Standards Met:**          42

- §115.12; §115.13; §115.14; §115.15; §115.16; §115.17; §115.18
- §115.21; §115.22
- §115.31; §115.32; §115.33; §115.34; §115.35
- §115.42; §115.43
- §115.51; §115.52; §115.53; §115.54
- §115.61; §115.62; §115.63; §115.64; §115.65; §115.66; §115.67; §115.68
- §115.71; §115.72; §115.73; §115.76; §115.77; §115.78
- §115.81; §115.82; §115.86; §115.87; §115.88; §115.89
- §115.401; §115.403

**Number of Standards Not Met:**          0

**Summary of Corrective Action (if any)**

# PREVENTION PLANNING

## Standard 115.11: Zero tolerance of sexual abuse and sexual harassment; PREA coordinator

**All Yes/No Questions Must Be Answered by The Auditor to Complete the Report**

### 115.11 (a)

- Does the agency have a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment?  ☒ Yes  ☐ No

- Does the written policy outline the agency's approach to preventing, detecting, and responding to sexual abuse and sexual harassment?  ☒ Yes  ☐ No

### 115.11 (b)

- Has the agency employed or designated an agency-wide PREA Coordinator?  ☒ Yes  ☐ No

- Is the PREA Coordinator position in the upper-level of the agency hierarchy?  ☒ Yes  ☐ No

- Does the PREA Coordinator have sufficient time and authority to develop, implement, and oversee agency efforts to comply with the PREA standards in all of its facilities?
  ☒ Yes  ☐ No

### 115.11 (c)

- If this agency operates more than one facility, has each facility designated a PREA compliance manager? (N/A if agency operates only one facility.) ☒ Yes  ☐ No  ☐ NA

- Does the PREA compliance manager have sufficient time and authority to coordinate the facility's efforts to comply with the PREA standards? (N/A if agency operates only one facility.)
  ☒ Yes  ☐ No  ☐ NA

**Auditor Overall Compliance Determination**

☒  **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐  **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐  **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

Program Statement (PS) 5324.12, Sexually Abusive Behavior Prevention and Intervention Program, pages 2, 13, 24, 26, 27, 28 & 49 and Institution PREA Compliance Supplement (IS) 5324.12 clearly meet the mandates of this standard. The agency's zero-tolerance against sexual abuse is clearly established and the policy also outlines the agency's approach to preventing, detecting and responding to sexual abuse and sexual harassment allegations. The Associate Warden of Custody/ICPM serves as the Institution PREA Compliance Manager for the FCC. In addition to the IPCM, there is a designated National PREA Coordinator and a PREA Coordinator assigned to each regional office in the agency to ensure adherence to the PREA. The IPCM reports to the Complex Warden. Zero-tolerance posters are displayed throughout every area of the complex. Agency and complex directives outline a zero-tolerance policy for all forms of sexual abuse and sexual harassment.  Inmates are informed orally about the zero-tolerance policy and the PREA program, during in-processing and are required to view a video during additional admissions and orientation (A&O) presentations. The video is offered in English and in Spanish. Additional program information is contained in the A&O Handbook, the Sexually Abusive Behavior Prevention and Intervention Pamphlet (SABPIP) and postings distributed throughout the complex (observed during the tour). All written documents are available in English and Spanish. Additional interpretive services are available for inmates who do not speak or read English. Both institution staff and inmates are provided with a wealth of opportunities to become aware of PREA policies and procedures. All employees receive initial training and annual training, as well as updates throughout the year.

All interviews with staff, contractors and inmates confirmed that each was aware of the zero-tolerance policy towards all forms of sexual abuse/sexual harassment.  The commitment to the enforcement and implementation of the PREA exceeds the required mandates of this standard. An examination of policy and supporting documentation also confirms compliance with this standard.

## Standard 115.12: Contracting with other entities for the confinement of inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.12 (a)

- If this agency is public and it contracts for the confinement of its inmates with private agencies or other entities including other government agencies, has the agency included the entity's obligation to comply with the PREA standards in any new contract or contract renewal signed on or after August 20, 2012? (N/A if the agency does not contract with private agencies or other entities for the confinement of inmates.)   ☒ Yes   ☐ No   ☐ NA

### 115.12 (b)

- Does any new contract or contract renewal signed on or after August 20, 2012 provide for agency contract monitoring to ensure that the contractor is complying with the PREA standards? (N/A if the agency does not contract with private agencies or other entities for the confinement of inmates OR the response to 115.12(a)-1 is "NO".)  ☒ Yes  ☐ No  ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The agency and complex meet the mandates of this standard. A review of the documentation submitted substantiates that the agency and complex require the entities which they contract for the confinement of inmates (privatized prisons or residential reentry centers or "halfway houses") to adopt and comply with the PREA standards. All agency contractual agreements were modified effective February 1, 2013, to incorporate the language requiring contractors to adopt and comply with PREA standards.

# Standard 115.13: Supervision and monitoring

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.13 (a)**

- Does the agency ensure that each facility has developed a staffing plan that provides for adequate levels of staffing and, where applicable, video monitoring, to protect inmates against sexual abuse? ☒ Yes  ☐ No

- Does the agency ensure that each facility has documented a staffing plan that provides for adequate levels of staffing and, where applicable, video monitoring, to protect inmates against sexual abuse? ☒ Yes  ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration the generally accepted detention and correctional practices in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes  ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration any judicial findings of inadequacy in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes   ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration any findings of inadequacy from Federal investigative agencies in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes   ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration any findings of inadequacy from internal or external oversight bodies in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes   ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration all components of the facility's physical plant (including "blind-spots" or areas where staff or inmates may be isolated) in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes   ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration the composition of the inmate population in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes   ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration the number and placement of supervisory staff in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes   ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration the institution programs occurring on a particular shift in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes   ☐ No   ☐ NA

- Does the agency ensure that each facility's staffing plan takes into consideration any applicable State or local laws, regulations, or standards in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes   ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration the prevalence of substantiated and unsubstantiated incidents of sexual abuse in calculating adequate staffing levels and determining the need for video monitoring? ☒ Yes   ☐ No

- Does the agency ensure that each facility's staffing plan takes into consideration any other relevant factors in calculating adequate staffing levels and determining the need for video monitoring?   ☒ Yes   ☐ No

## 115.13 (b)

- In circumstances where the staffing plan is not complied with, does the facility document and justify all deviations from the plan? (N/A if no deviations from staffing plan.)
  ☐ Yes   ☐ No   ☒ NA

## 115.13 (c)

- In the past 12 months, has the facility, in consultation with the agency PREA Coordinator, assessed, determined, and documented whether adjustments are needed to: The staffing plan established pursuant to paragraph (a) of this section? ☒ Yes ☐ No

- In the past 12 months, has the facility, in consultation with the agency PREA Coordinator, assessed, determined, and documented whether adjustments are needed to: The facility's deployment of video monitoring systems and other monitoring technologies? ☒ Yes ☐ No

- In the past 12 months, has the facility, in consultation with the agency PREA Coordinator, assessed, determined, and documented whether adjustments are needed to: The resources the facility has available to commit to ensure adherence to the staffing plan? ☒ Yes ☐ No

## 115.13 (d)

- Has the facility/agency implemented a policy and practice of having intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment? ☒ Yes ☐ No

- Is this policy and practice implemented for night shifts as well as day shifts? ☒ Yes ☐ No

- Does the facility/agency have a policy prohibiting staff from alerting other staff members that these supervisory rounds are occurring, unless such announcement is related to the legitimate operational functions of the facility? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 3000.03, Human Resource Management Manual, pages 8-12, PS 5324.12, page 17, the complex staffing report and the Workforce Utilization Committee meeting minutes address the mandates of this standard. Agency policy requires each complex to review staffing plans on an annual basis. Interviews with the Complex Warden and executive staff revealed compliance with the PREA and that other safety and security issues are always a primary focus when they consider and review their respective staffing plans. In addition to the quarterly Workforce

Utilization meeting, the Complex Warden meets regularly with his executive staff to address staffing issues as they relate to the PREA. Quarterly Workforce Utilization minutes are on file.

The complex has been provided with all necessary resources to support the programs and procedures to ensure compliance with the PREA standards. The audit included an examination of all video monitoring systems; inmate access to telephones; the TRULINCS email system; staff interviews, and rosters. Supervisory and Administrative staff members routinely make unannounced rounds covering all shifts and these rounds are documented. Interviews with staff confirmed unannounced rounds to all areas of the complex are conducted on a weekly basis, with no warning to employees. The complex does utilize convex mirrors to supplement security in areas where there are numerous corners or potential blind spots. During the tour, there were no areas identified by the auditors as blind spots or areas of concern. Compliance was determined by interviews with Operations Lieutenants on all three shifts, the Captain, Human Resource Manager, and correctional staff, reviews of documented staffing rosters, daily supervisory checks, examining video monitoring system, inmate access to telephone, the TRULINCS email system and the complex's workforce quarterly meeting records. An examination of supporting documentation also confirms compliance with this standard.

## Standard 115.14: Youthful inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.14 (a)

- Does the facility place all youthful inmates in housing units that separate them from sight, sound, and physical contact with any adult inmates through use of a shared dayroom or other common space, shower area, or sleeping quarters? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☐ Yes   ☐ No   ☒ NA

### 115.14 (b)

- In areas outside of housing units does the agency maintain sight and sound separation between youthful inmates and adult inmates? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☐ Yes   ☐ No   ☒ NA

- In areas outside of housing units does the agency provide direct staff supervision when youthful inmates and adult inmates have sight, sound, or physical contact? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☐ Yes   ☐ No   ☒ NA

### 115.14 (c)

- Does the agency make its best efforts to avoid placing youthful inmates in isolation to comply with this provision? (N/A if facility does not have youthful inmates [inmates <18 years old].) ☐ Yes   ☐ No   ☒ NA

- Does the agency, while complying with this provision, allow youthful inmates daily large-muscle exercise and legally required special education services, except in exigent circumstances? (N/A if facility does not have youthful inmates [inmates <18 years old].)   ☐ Yes   ☐ No   ☒ NA

- Do youthful inmates have access to other programs and work opportunities to the extent possible? (N/A if facility does not have youthful inmates [inmates <18 years old].)
☐ Yes   ☐ No   ☒ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

FCC Terre Haute does not house youthful inmates.

## Standard 115.15: Limits to cross-gender viewing and searches

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.15 (a)

- Does the facility always refrain from conducting any cross-gender strip or cross-gender visual body cavity searches, except in exigent circumstances or by medical practitioners?
☒ Yes   ☐ No

### 115.15 (b)

- Does the facility always refrain from conducting cross-gender pat-down searches of female inmates in non-exigent circumstances? (N/A here for facilities with less than 50 inmates before August 20,2017.) ☒ Yes   ☐ No   ☐ NA

- Does the facility always refrain from restricting female inmates' access to regularly available programming or other out-of-cell opportunities in order to comply with this provision? (N/A here for facilities with less than 50 inmates before August 20, 2017.) ☒ Yes   ☐ No   ☐ NA

### 115.15 (c)

- Does the facility document all cross-gender strip searches and cross-gender visual body cavity searches? ☒ Yes   ☐ No

- Does the facility document all cross-gender pat-down searches of female inmates? ☒ Yes ☐ No

## 115.15 (d)

- Does the facility implement a policy and practice that enables inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks? ☒ Yes ☐ No

- Does the facility require staff of the opposite gender to announce their presence when entering an inmate housing unit? ☒ Yes ☐ No

## 115.15 (e)

- Does the facility always refrain from searching or physically examining transgender or intersex inmates for the sole purpose of determining the inmate's genital status? ☒ Yes ☐ No

- If an inmate's genital status is unknown, does the facility determine genital status during conversations with the inmate, by reviewing medical records, or, if necessary, by learning that information as part of a broader medical examination conducted in private by a medical practitioner? ☒ Yes ☐ No

## 115.15 (f)

- Does the facility/agency train security staff in how to conduct cross-gender pat down searches in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs? ☒ Yes ☐ No

- Does the facility/agency train security staff in how to conduct searches of transgender and intersex inmates in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's*

*conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 17 and PS 5521.06, Searches of Housing Units, Inmates, and Inmate Work Areas, page 5, address this standard. Cross-gender strip or cross-gender body cavity searches are prohibited, except in emergency situations or when performed and documented by a medical practitioner. Staff interviews indicated they received cross-gender pat search training during initial and annual training. The auditors observed that each of the units have a variety of configurations of shower stalls and toilets. They all have curtains and toilets have partitions for privacy purposes. During the audit, a curtain was added to a toilet area in the reception area holding room to provide additional privacy for the inmates. Supervisory and Administrative staff routinely make unannounced rounds covering all shifts and these rounds are documented. Interviews with staff confirmed unannounced rounds to all areas of the complex are conducted on a weekly basis, with no warning to employees. Inmates, correctional officers and administrative staff stated inmates are allowed to shower, dress and use the toilet privately, without being viewed by female staff. The inmates interviewed acknowledged they can shower, dress and use the toilet privately, without being viewed by staff of the opposite gender.

Staff and inmates interviewed indicated that employees of the opposite gender announce their presence before entering a housing unit. The possibility of opposite gender staff entering the housing units is also announced over the speaker system at the beginning of each shift. Additionally, the auditor observed written notifications, which clearly stated the possibility of opposite gender staff routinely entering the units, posted in the housing units' common areas. The postings were written in both English and Spanish. Staff members were aware of the policy prohibiting the search of a transgender or intersex inmate for the sole purpose of determining the inmate's genital status. The above factors support compliance of this standard. There have not been any instances of cross gender strip or body cavity searches during the applicable audit period.

## Standard 115.16: Inmates with disabilities and inmates who are limited English proficient

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.16 (a)**

- ▪ Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who are deaf or hard of hearing? ☒ Yes   ☐ No

- ▪ Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who are blind or have low vision? ☒ Yes   ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who have intellectual disabilities? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who have psychiatric disabilities? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: inmates who have speech disabilities? ☒ Yes ☐ No

- Does the agency take appropriate steps to ensure that inmates with disabilities have an equal opportunity to participate in or benefit from all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment, including: Other (if "other," please explain in overall determination notes)? ☒ Yes ☐ No

- Do such steps include, when necessary, ensuring effective communication with inmates who are deaf or hard of hearing? ☒ Yes ☐ No

- Do such steps include, when necessary, providing access to interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary? ☒ Yes ☐ No

- Does the agency ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities including inmates who: Have intellectual disabilities? ☒ Yes ☐ No

- Does the agency ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities including inmates who: Have limited reading skills? ☒ Yes ☐ No

- Does the agency ensure that written materials are provided in formats or through methods that ensure effective communication with inmates with disabilities including inmates who: Are blind or have low vision? ☒ Yes ☐ No

## 115.16 (b)

- Does the agency take reasonable steps to ensure meaningful access to all aspects of the agency's efforts to prevent, detect, and respond to sexual abuse and sexual harassment to inmates who are limited English proficient? ☒ Yes ☐ No

- Do these steps include providing interpreters who can interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary? ☒ Yes ☐ No

**115.16 (c)**

- Does the agency always refrain from relying on inmate interpreters, inmate readers, or other types of inmate assistance except in limited circumstances where an extended delay in obtaining an effective interpreter could compromise the inmate's safety, the performance of first-response duties under §115.64, or the investigation of the inmate's allegations? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 19 & 20 and the A&O Handbook meet the mandates of this standard. FCC takes appropriate steps to ensure inmates with disabilities and inmates with LEP have an opportunity to participate in and benefit from the complex's efforts to prevent, detect and respond to sexual abuse and sexual harassment. PREA handouts, bulletin board postings and inmate handbooks are in both English and Spanish. The above-mentioned documents were submitted to and reviewed by the auditor. Employees interviewed were aware of the policy that under no circumstances, are inmate interpreters or assistants to be used when dealing with PREA issues. The DOJ has set up a blanket purchase agreement for on-demand over-the-phone interpreter services (LanguageLine Solutions), which are available to all BOP institutions to assist staff with inmates who don't have a basic command of the English language. There were six LEP inmates, and four disabled inmates interviewed during this audit. The review of documentation along with staff and inmate interviews support a finding that the complex is in compliance with this standard.

## Standard 115.17: Hiring and promotion decisions

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.17 (a)**

- Does the agency prohibit the hiring or promotion of anyone who may have contact with inmates who has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997)? ☒ Yes ☐ No

- Does the agency prohibit the hiring or promotion of anyone who may have contact with inmates who has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse? ☒ Yes   ☐ No

- Does the agency prohibit the hiring or promotion of anyone who may have contact with inmates who has been civilly or administratively adjudicated to have engaged in the activity described in the question immediately above? ☒ Yes   ☐ No

- Does the agency prohibit the enlistment of services of any contractor who may have contact with inmates who has engaged in sexual abuse in a prison, jail, lockup, community confinement facility, juvenile facility, or other institution (as defined in 42 U.S.C. 1997)? ☒ Yes   ☐ No

- Does the agency prohibit the enlistment of services of any contractor who may have contact with inmates who has been convicted of engaging or attempting to engage in sexual activity in the community facilitated by force, overt or implied threats of force, or coercion, or if the victim did not consent or was unable to consent or refuse? ☒ Yes   ☐ No

- Does the agency prohibit the enlistment of services of any contractor who may have contact with inmates who has been civilly or administratively adjudicated to have engaged in the activity described in the question immediately above? ☒ Yes   ☐ No

## 115.17 (b)

- Does the agency consider any incidents of sexual harassment in determining whether to hire or promote anyone, or to enlist the services of any contractor, who may have contact with inmates?   ☒ Yes   ☐ No

## 115.17 (c)

- Before hiring new employees, who may have contact with inmates, does the agency: perform a criminal background records check? ☒ Yes   ☐ No

- Before hiring new employees, who may have contact with inmates, does the agency: consistent with Federal, State, and local law, make its best efforts to contact all prior institutional employers for information on substantiated allegations of sexual abuse or any resignation during a pending investigation of an allegation of sexual abuse? ☒ Yes   ☐ No

## 115.17 (d)

- Does the agency perform a criminal background records check before enlisting the services of any contractor who may have contact with inmates? ☒ Yes   ☐ No

## 115.17 (e)

- Does the agency either conduct criminal background records checks at least every five years of current employees and contractors who may have contact with inmates or have in place a system for otherwise capturing such information for current employees? ☒ Yes   ☐ No

## 115.17 (f)

- Does the agency ask all applicants and employees who may have contact with inmates directly about previous misconduct described in paragraph (a) of this section in written applications or interviews for hiring or promotions? ☒ Yes   ☐ No

- Does the agency ask all applicants and employees who may have contact with inmates directly about previous misconduct described in paragraph (a) of this section in any interviews or written self-evaluations conducted as part of reviews of current employees? ☒ Yes   ☐ No

- Does the agency impose upon employees a continuing affirmative duty to disclose any such misconduct? ☒ Yes   ☐ No

## 115.17 (g)

- Does the agency consider material omissions regarding such misconduct, or the provision of materially false information, grounds for termination? ☒ Yes   ☐ No

## 115.17 (h)

- Does the agency provide information on substantiated allegations of sexual abuse or sexual harassment involving a former employee upon receiving a request from an institutional employer for whom such employee has applied to work? (N/A if providing information on substantiated allegations of sexual abuse or sexual harassment involving a former employee is prohibited by law.) ☒ Yes   ☐ No   ☐ NA

**Auditor Overall Compliance Determination**

☐     **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 3000.03, pages 28, 41 & 45; PS 3420.11, Standards of Employee Conduct, pages 6 & 7; Pre-Employment Guide, page 2; SF85P, Questionnaire for Public Trust Positions, page 1; and BOP Recruitment Flyer, page 1, address the mandates of this standard. Employee files were reviewed for the components of this standard. A Human Resource Specialist was interviewed and stated that all components of this standard have been met. Background checks have been completed on all employees, contractors and volunteers. BOP regional office personnel also conduct background checks before approving staff promotions. A tracking system is in place to ensure that updated background checks are conducted every five years. The Office of Personnel Management (OPM) is experiencing delays in processing background investigations. The FBI notifies the OPM on a monthly basis concerning any arrest of BOP employees. They would then notify the Human Resource Manager at the complex. Policy clearly states the submission of false information by any applicant is grounds for termination. The agency makes its best efforts to contact all prior institution employers for information on substantiated allegations of sexual abuse or resignations occurring during a pending investigation of sexual abuse.

The agency also provides information on substantiated allegations of sexual abuse/sexual harassment involving former employees, when requested by a potential institution employer. Appropriate licensing and certifying agencies are notified, when professional employees are terminated for substantiated allegations of sexual abuse/sexual harassment. Based upon compliant policies and interview with the Human Resource Manager, FCC Terre Haute is in full compliance with this standard. Documentation on file supports a finding that the complex is in compliance with this standard.

## Standard 115.18: Upgrades to facilities and technologies

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.18 (a)**

- If the agency designed or acquired any new facility or planned any substantial expansion or modification of existing facilities, did the agency consider the effect of the design, acquisition, expansion, or modification upon the agency's ability to protect inmates from sexual abuse? (N/A if agency/facility has not acquired a new facility or made a substantial expansion to existing facilities since August 20, 2012, or since the last PREA audit, whichever is later.)
  ☐Yes  ☐ No  ☒ NA

**115.18 (b)**

- If the agency installed or updated a video monitoring system, electronic surveillance system, or other monitoring technology, did the agency consider how such technology may enhance the agency's ability to protect inmates from sexual abuse? (N/A if agency/facility has not installed or updated a video monitoring system, electronic surveillance system, or other monitoring technology since August 20, 2012, or since the last PREA audit, whichever is later.)
  ☐Yes  ☐ No  ☒ NA

**Auditor Overall Compliance Determination**

☐    **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒    **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐    **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

When installing or updating a video monitoring system, electronic surveillance system, or other monitoring technology, consideration would be given to how such technology may enhance the agency's ability to protect inmates from sexual abuse. Upgrades were made to the ███████ ███████ with ██████████████████ added in October 2017 ██████████ added in October 2017 and one additional hard drive server added in November 2018. Since August 20, 2012, there have been no substantial expansions/modifications to the complex. As noted in an interview with the Complex Warden, there are plans to add 16 new cameras in strategic locations throughout the complex in the near future.

---

# RESPONSIVE PLANNING

## Standard 115.21: Evidence protocol and forensic medical examinations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.21 (a)**

- ▪ If the agency is responsible for investigating allegations of sexual abuse, does the agency follow a uniform evidence protocol that maximizes the potential for obtaining usable physical evidence for administrative proceedings and criminal prosecutions? (N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations.) ☒ Yes ☐ No ☐ NA

**115.21 (b)**

- ▪ Is this protocol developmentally appropriate for youth where applicable? (N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations.) ☒ Yes ☐ No ☐ NA

- Is this protocol, as appropriate, adapted from or otherwise based on the most recent edition of the U.S. Department of Justice's Office on Violence Against Women publication, "A National Protocol for Sexual Assault Medical Forensic Examinations, Adults/Adolescents," or similarly comprehensive and authoritative protocols developed after 2011? (N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations.)  ☒ Yes   ☐ No   ☐ NA

## 115.21 (c)

- Does the agency offer all victims of sexual abuse access to forensic medical examinations, whether on-site or at an outside facility, without financial cost, where evidentiarily or medically appropriate? ☒ Yes   ☐ No

- Are such examinations performed by Sexual Assault Forensic Examiners (SAFEs) or Sexual Assault Nurse Examiners (SANEs) where possible? ☒ Yes   ☐ No

- If SAFEs or SANEs cannot be made available, is the examination performed by other qualified medical practitioners (they must have been specifically trained to conduct sexual assault forensic exams)? ☒ Yes   ☐ No

- Has the agency documented its efforts to provide SAFEs or SANEs? ☒ Yes   ☐ No

## 115.21 (d)

- Does the agency attempt to make available to the victim a victim advocate from a rape crisis center? ☒ Yes   ☐ No

- If a rape crisis center is not available to provide victim advocate services, does the agency make available to provide these services a qualified staff member from a community-based organization, or a qualified agency staff member? ☒ Yes   ☐ No

- Has the agency documented its efforts to secure services from rape crisis centers? ☒ Yes   ☐ No

## 115.21 (e)

- As requested by the victim, does the victim advocate, qualified agency staff member, or qualified community-based organization staff member accompany and support the victim through the forensic medical examination process and investigatory interviews? ☒ Yes   ☐ No

- As requested by the victim, does this person provide emotional support, crisis intervention, information, and referrals? ☒ Yes   ☐ No

## 115.21 (f)

- If the agency itself is not responsible for investigating allegations of sexual abuse, has the agency requested that the investigating entity follow the requirements of paragraphs (a) through

(e) of this section? (N/A if the agency/facility is responsible for conducting criminal AND administrative sexual abuse investigations.) ☒ Yes ☐ No ☐ NA

## 115.21 (g)

▪ Auditor is not required to audit this provision.

## 115.21 (h)

▪ If the agency uses a qualified agency staff member or a qualified community-based staff member for the purposes of this section, has the individual been screened for appropriateness to serve in this role and received education concerning sexual assault and forensic examination issues in general? [N/A if agency attempts to make a victim advocate from a rape crisis center available to victims per 115.21(d) above.] ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 4, 5, 23 & 24; PS 6031.04, Patient Care, pages 42 & 43; Guide for First Responders/Operations Lieutenant; and PREA Checklist and Instructions address the mandates of this standard. Correctional and medical staff members were interviewed concerning this standard and all were knowledgeable of the procedures required to secure and obtain physical evidence when sexual abuse is alleged. Staff knew the Special Investigative Services (SIS) Lieutenant conducts investigations relative to sexual abuse/harassment allegations. All forensic medical examinations are conducted by SAFE/SANE staff at the local hospital (Union Hospital). Victim advocate services are available through a Gratuitous Services Agreement with the Council on Domestic Abuse, Inc. in Terre Haute to provide victim advocate services to inmates. The auditor contacted the Executive Director of the Council to discuss and confirmed the agreement to provide rape crisis intervention services. She indicated that they have a good partnership with the staff at the FCC. Just Detention International was also contacted and has had no contact from FCC Terre Haute inmate victims. There were three SAFE/SANE exams conducted during the past 12 months. The inmates are not charged for any services related to PREA compliance. The Acting Chief Psychologist indicated that she and other Psychologists are trained as advocates and would

report to the institution and escort the inmate that has alleged sexual abuse to the hospital, if requested. The complex also has a Memorandum of Understanding (MOU) with the Federal Bureau of Investigation (FBI) to conduct criminal investigations. Staff reported knowledge of the facilities procedures to obtain usable physical evidence if sexual abuse is alleged. The complex also has a specially trained Evidence Recovery Team to gather all evidence. Staff indicated they are aware that Special Investigative Services (SIS) conducts all sexual abuse investigations.

## Standard 115.22: Policies to ensure referrals of allegations for investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.22 (a)

- Does the agency ensure an administrative or criminal investigation is completed for all allegations of sexual abuse? ☒ Yes   ☐ No

- Does the agency ensure an administrative or criminal investigation is completed for all allegations of sexual harassment? ☒ Yes   ☐ No

### 115.22 (b)

- Does the agency have a policy and practice in place to ensure that allegations of sexual abuse or sexual harassment are referred for investigation to an agency with the legal authority to conduct criminal investigations, unless the allegation does not involve potentially criminal behavior?  ☒ Yes   ☐ No

- Has the agency published such policy on its website or, if it does not have one, made the policy available through other means? ☒ Yes   ☐ No

- Does the agency document all such referrals? ☒ Yes   ☐ No

### 115.22 (c)

- If a separate entity is responsible for conducting criminal investigations, does such publication describe the responsibilities of both the agency and the investigating entity? [N/A if the agency/facility is responsible for criminal investigations. See 115.21(a).] ☒ Yes   ☐ No   ☐ NA

### 115.22 (d)

- Auditor is not required to audit this provision.

### 115.22 (e)

- Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 43, 44, & 45 and the FBI Memorandum of Understanding address the mandates of this standard. Administrative and criminal investigations are completed on all allegations of sexual abuse/sexual harassment. The SIS, the Office of Internal Affairs (OIA), the FBI and the OIG conduct all investigations. The SIS Lieutenant was interviewed and is very knowledgeable concerning the protocols for conducting investigations of alleged sexual abuse/sexual harassment. There are 253 agency investigators in the BOP and nine trained investigators at FCC Terre Haute. The FBI conducts the criminal investigations for the complex. The BOP/FBI MOU, dated August 1996, delineates each agency's responsibilities relative to an incident involving a criminal act. There were 44 allegations of sexual abuse and sexual harassment during the auditing period. All investigations were initiated and completed in accordance with the PREA standards and agency policy. The documentation related to the investigations was contained in the SIS files and was reviewed by the auditors. The complex utilizes an IPCM Information Tracking Log to ensure all required steps of the investigation are completed and are timely. The tracking form is maintained by SIS.

The information tracked includes the date of the allegation, name of the victim/perpetrator, SHU placement/reviews, initial two-day after-action review, full protocol, investigation outcome/date, date inmate notified of outcome and retaliation monitoring. A review of training documents confirmed that all investigators received instruction in conducting sexual assault investigations in confined spaces/prisons. Interviews with staff and an investigator, as well as an examination of supporting documentation confirm the complex's compliance with this standard.

---

# TRAINING AND EDUCATION

## Standard 115.31: Employee training

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.31 (a)**

- Does the agency train all employees who may have contact with inmates on its zero-tolerance policy for sexual abuse and sexual harassment? ☒ Yes   ☐ No

- Does the agency train all employees who may have contact with inmates on how to fulfill their responsibilities under agency sexual abuse and sexual harassment prevention, detection, reporting, and response policies and procedures? ☒ Yes   ☐ No

- Does the agency train all employees who may have contact with inmates on inmates' right to be free from sexual abuse and sexual harassment ☒ Yes   ☐ No

- Does the agency train all employees who may have contact with inmates on the right of inmates and employees to be free from retaliation for reporting sexual abuse and sexual harassment? ☒ Yes   ☐ No

- Does the agency train all employees who may have contact with inmates on the dynamics of sexual abuse and sexual harassment in confinement? ☒ Yes   ☐ No

- Does the agency train all employees who may have contact with inmates on the common reactions of sexual abuse and sexual harassment victims? ☒ Yes   ☐ No

- Does the agency train all employees who may have contact with inmates on how to detect and respond to signs of threatened and actual sexual abuse? ☒ Yes   ☐ No

- Does the agency train all employees who may have contact with inmates on how to avoid inappropriate relationships with inmates? ☒ Yes   ☐ No

- Does the agency train all employees who may have contact with inmates on how to communicate effectively and professionally with inmates, including lesbian, gay, bisexual, transgender, intersex, or gender nonconforming inmates? ☒ Yes   ☐ No

- Does the agency train all employees who may have contact with inmates on how to comply with relevant laws related to mandatory reporting of sexual abuse to outside authorities? ☒ Yes   ☐ No

## 115.31 (b)

- Is such training tailored to the gender of the inmates at the employee's facility? ☒ Yes   ☐ No

- Have employees received additional training if reassigned from a facility that houses only male inmates to a facility that houses only female inmates, or vice versa? ☒ Yes   ☐ No

## 115.31 (c)

- Have all current employees who may have contact with inmates received such training? ☒ Yes   ☐ No

- Does the agency provide each employee with refresher training every two years to ensure that all employees know the agency's current sexual abuse and sexual harassment policies and procedures? ☒ Yes   ☐ No

- In years in which an employee does not receive refresher training, does the agency provide refresher information on current sexual abuse and sexual harassment policies? ☒ Yes   ☐ No

**115.31 (d)**

- Does the agency document, through employee signature or electronic verification, that employees understand the training they have received? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐    **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒    **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐    **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 13, 14, 24, 25 & 26; IS 5324.12; and the Annual Training 2018 Lesson Plan address the mandates of this standard. The BOP provides extensive PREA training at the Federal Law Enforcement Training Center (FLETC). All newly hired employees must attend and successfully complete the course curriculum. All staff must also complete the female offender specialized training. Employees also have PREA information noted on their computer desktops and screensavers. All employees carry a PREA First Responder reference card in the event of a reported PREA incident. Additionally, contractors and volunteers are provided training relative to their duties and responsibilities. All staff members are mandated to receive training annually and the curriculum includes an extensive review of PREA requirements. Based on a sampling of employee records, and interviews, all staff receive required employee training. All staff interviewed indicated that they received the required PREA training initially and annually. The training curriculum, training sign-in sheets and other related training documentation were reviewed by the auditor. Interviewed staff verified the requirement to acknowledge, in writing, not only that they received PREA training, but that they understood the training.

## Standard 115.32: Volunteer and contractor training

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.32 (a)**

- Has the agency ensured that all volunteers and contractors who have contact with inmates have been trained on their responsibilities under the agency's sexual abuse and sexual harassment prevention, detection, and response policies and procedures? ☒ Yes ☐ No

**115.32 (b)**

- Have all volunteers and contractors who have contact with inmates been notified of the agency's zero-tolerance policy regarding sexual abuse and sexual harassment and informed how to report such incidents (the level and type of training provided to volunteers and contractors shall be based on the services they provide and level of contact they have with inmates)? ☒ Yes ☐ No

**115.32 (c)**

- Does the agency maintain documentation confirming that volunteers and contractors understand the training they have received? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 26; Annual Training 2018 Lesson Plan; and Annual Training 2018 Agenda/Presentation address the mandates of this standard. There are 160 volunteers and contractors who have received the PREA training in the past 12 months, to include the zero-tolerance policy, reporting and responding requirements. The training is documented and maintained on file. Copies of training sign-in sheets and other related documents were reviewed by the auditor. Two contract staff members were interviewed and indicated they received the training and were able to discuss what they learned during the training.

## Standard 115.33: Inmate education

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.33 (a)**

- During intake, do inmates receive information explaining the agency's zero-tolerance policy regarding sexual abuse and sexual harassment? ☒ Yes ☐ No

- During intake, do inmates receive information explaining how to report incidents or suspicions of sexual abuse or sexual harassment? ☒ Yes ☐ No

## 115.33 (b)

- Within 30 days of intake, does the agency provide comprehensive education to inmates either in person or through video regarding: Their rights to be free from sexual abuse and sexual harassment? ☒ Yes ☐ No

- Within 30 days of intake, does the agency provide comprehensive education to inmates either in person or through video regarding: Their rights to be free from retaliation for reporting such incidents? ☒ Yes ☐ No

- Within 30 days of intake, does the agency provide comprehensive education to inmates either in person or through video regarding: Agency policies and procedures for responding to such incidents? ☒ Yes ☐ No

## 115.33 (c)

- Have all inmates received such education? ☒ Yes ☐ No

- Do inmates receive education upon transfer to a different facility to the extent that the policies and procedures of the inmate's new facility differ from those of the previous facility? ☒ Yes ☐ No

## 115.33 (d)

- Does the agency provide inmate education in formats accessible to all inmates including those who are limited English proficient? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who are deaf? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who are visually impaired? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who are otherwise disabled? ☒ Yes ☐ No

- Does the agency provide inmate education in formats accessible to all inmates including those who have limited reading skills? ☒ Yes ☐ No

## 115.33 (e)

- Does the agency maintain documentation of inmate participation in these education sessions? ☒ Yes ☐ No

**115.33 (f)**

- In addition to providing such education, does the agency ensure that key information is continuously and readily available or visible to inmates through posters, inmate handbooks, or other written formats? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 26 & 27; A&O Handbook (English and Spanish); SABPIP (English and Spanish) and A&O Program Checklist/Signature Sheets address the mandates of this standard. The complex puts forth its best efforts to educate the inmates regarding the PREA. Inmates receive information during the intake process, including a pamphlet and inmate handbook, printed in English and Spanish. There were 891 inmates admitted over the past year. The PREA intake screening is done the day they arrive by a member of the Unit Team. A staff member conducts an in-depth education program regarding the PREA for all inmates within 30 days of their arrival at the complex. The program includes definitions of sexually abusive behavior and sexual harassment, prevention strategies and reporting modalities. The inmates have access to the TRULINCS computer program which also provides them with PREA information. There are PREA posters displayed throughout the complex and in each housing unit and a "Hotline" telephone number, which may be called to report sexual abuse or sexual harassment. Since the "Hotline" telephone number is an 800-toll-free number, inmates are advised via the SABPIP to contact a member of their unit team to place the call. The OIG mailing address is listed in the A&O Handbook and posted in each housing unit for inmate correspondence concerning any sexual abuse or sexual harassment allegation.

There is also a translation language line available for LEP inmates. The auditor was provided a random sampling of A&O Checklists/Signature Sheets to verify that inmates, admitted during the auditing period, received the SABPIP education and relevant written materials. All inmates are required to acknowledge completion of PREA education. During the interview process, randomly selected inmates indicated they received information about the complex's rules

against sexual abuse/sexual harassment, when they arrived at the complex. They further indicated they were advised about their right not to be sexually abused/sexually harassed, how to report sexual abuse/sexual harassment and their right not be punished for reporting sexual abuse/sexual harassment. Inmates were aware of available services outside of the complex for dealing with sexual abuse.

## Standard 115.34: Specialized training: Investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.34 (a)

▪ In addition to the general training provided to all employees pursuant to §115.31, does the agency ensure that, to the extent the agency itself conducts sexual abuse investigations, its investigators have received training in conducting such investigations in confinement settings? (N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).) ☒ Yes  ☐ No  ☐ NA

### 115.34 (b)

▪ Does this specialized training include techniques for interviewing sexual abuse victims? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes  ☐ No  ☐ NA

▪ Does this specialized training include proper use of Miranda and Garrity warnings? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes  ☐ No  ☐ NA

▪ Does this specialized training include sexual abuse evidence collection in confinement settings? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes  ☐ No  ☐ NA

▪ Does this specialized training include the criteria and evidence required to substantiate a case for administrative action or prosecution referral? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes  ☐ No  ☐ NA

### 115.34 (c)

▪ Does the agency maintain documentation that agency investigators have completed the required specialized training in conducting sexual abuse investigations? [N/A if the agency does not conduct any form of administrative or criminal sexual abuse investigations. See 115.21(a).] ☒ Yes  ☐ No  ☐ NA

### 115.34 (d)

- Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐     **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 28, Sexual Violence PREA Training Slide Show; National Institute of Corrections (NIC) Investigative Intel Training Records (PREA-Investigating Sexual Abuse in a Confinement Setting); BOP Learn Video Series; TRUINTEL Investigative Report Training Agenda; Training Logs/Records of Investigative Staff; and SIS/PREA National Video Conference Training meet the mandates of this standard. The SIS staff and FBI criminal investigators have received PREA specialized training provided by the NIC and through the DOJ. This auditor reviewed specialized training documentation, including the BOP Course Completion List for Investigating Sexual Abuse in a Confinement Setting. The SIS Lieutenant was interviewed and found to be very knowledgeable of the PREA investigative process. Compliance was determined by review of agency policies on investigator training, PREA investigative files, investigator training files and interviews with the onsite investigators.

## Standard 115.35: Specialized training: Medical and mental health care

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.35 (a)**

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how to detect and assess signs of sexual abuse and sexual harassment? ☒ Yes   ☐ No

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how to preserve physical evidence of sexual abuse? ☒ Yes   ☐ No

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how to respond effectively and professionally to victims of sexual abuse and sexual harassment? ☒ Yes   ☐ No

- Does the agency ensure that all full- and part-time medical and mental health care practitioners who work regularly in its facilities have been trained in how and to whom to report allegations or suspicions of sexual abuse and sexual harassment? ☒ Yes   ☐ No

## 115.35 (b)

- If medical staff employed by the agency conduct forensic examinations, do such medical staff receive appropriate training to conduct such examinations? (N/A if agency medical staff at the facility do not conduct forensic exams.) ☐ Yes   ☐ No   ☒ NA

## 115.35 (c)

- Does the agency maintain documentation that medical and mental health practitioners have received the training referenced in this standard either from the agency or elsewhere? ☒ Yes   ☐ No

## 115.35 (d)

- Do medical and mental health care practitioners employed by the agency also receive training mandated for employees by §115.31? ☒ Yes   ☐ No

- Do medical and mental health care practitioners contracted by and volunteering for the agency also receive training mandated for contractors and volunteers by §115.32? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 28 & 29; Annual Training Lesson Plan 2018; Introduction to Correctional Techniques; SABPIP Power Point Presentation; and 6-hour PREA Video Series address the mandates of this standard. Other training includes online victim advocacy specialized training

for psychologists. The agency ensures all full- and part-time medical and mental health practitioners, who work regularly in its facilities, have been trained according to the practitioner's status in the Bureau. All mental health and medical staff have received the required specialized training on victim identification, interviewing, reporting and clinical interventions. Employees receive training annually and supporting documentation is on file. Medical and mental health care staff acknowledged, in writing, that they both received and understood the training, as it relates to the PREA. Interviews with medical and mental health staff confirmed awareness of their responsibilities regarding the PREA. All cases requiring the processing of sexual assault evidence collection kits are transported to the Union Hospital where a SAFE/SANE is available. A review of the training documentation and policy confirm the complex's compliance to this standard.

# SCREENING FOR RISK OF SEXUAL VICTIMIZATION AND ABUSIVENESS

## Standard 115.41: Screening for risk of victimization and abusiveness

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.41 (a)

- Are all inmates assessed during an intake screening for their risk of being sexually abused by other inmates or sexually abusive toward other inmates? ☒ Yes ☐ No

- Are all inmates assessed upon transfer to another facility for their risk of being sexually abused by other inmates or sexually abusive toward other inmates? ☒ Yes ☐ No

### 115.41 (b)

- Do intake screenings ordinarily take place within 72 hours of arrival at the facility? ☒ Yes ☐ No

### 115.41 (c)

- Are all PREA screening assessments conducted using an objective screening instrument? ☒ Yes ☐ No

### 115.41 (d)

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (1) Whether the inmate has a mental, physical, or developmental disability? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (2) The age of the inmate? ☒ Yes ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (3) The physical build of the inmate? ☒ Yes   ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (4) Whether the inmate has previously been incarcerated? ☒ Yes   ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (5) Whether the inmate's criminal history is exclusively nonviolent? ☒ Yes   ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (6) Whether the inmate has prior convictions for sex offenses against an adult or child? ☒ Yes   ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (7) Whether the inmate is or is perceived to be gay, lesbian, bisexual, transgender, intersex, or gender nonconforming (the facility affirmatively asks the inmate about his/her sexual orientation and gender identity AND makes a subjective determination based on the screener's perception whether the inmate is gender non-conforming or otherwise may be perceived to be LGBTI)? ☒ Yes   ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (8) Whether the inmate has previously experienced sexual victimization? ☒ Yes   ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (9) The inmate's own perception of vulnerability? ☒ Yes   ☐ No

- Does the intake screening consider, at a minimum, the following criteria to assess inmates for risk of sexual victimization: (10) Whether the inmate is detained solely for civil immigration purposes?  ☒ Yes   ☐ No

## 115.41 (e)

- In assessing inmates for risk of being sexually abusive, does the initial PREA risk screening consider, when known to the agency: prior acts of sexual abuse? ☒ Yes   ☐ No

- In assessing inmates for risk of being sexually abusive, does the initial PREA risk screening consider, when known to the agency: prior convictions for violent offenses? ☒ Yes   ☐ No

- In assessing inmates for risk of being sexually abusive, does the initial PREA risk screening consider, when known to the agency: history of prior institutional violence or sexual abuse? ☒ Yes   ☐ No

## 115.41 (f)

- Within a set time period not more than 30 days from the inmate's arrival at the facility, does the facility reassess the inmate's risk of victimization or abusiveness based upon any additional, relevant information received by the facility since the intake screening? ☒ Yes ☐ No

## 115.41 (g)

- Does the facility reassess an inmate's risk level when warranted due to a: Referral? ☒ Yes ☐ No

- Does the facility reassess an inmate's risk level when warranted due to a: Request? ☒ Yes ☐ No

- Does the facility reassess an inmate's risk level when warranted due to a: Incident of sexual abuse? ☒ Yes ☐ No

- Does the facility reassess an inmate's risk level when warranted due to a: Receipt of additional information that bears on the inmate's risk of sexual victimization or abusiveness? ☒ Yes ☐ No

## 115.41 (h)

- Is it the case that inmates are not ever disciplined for refusing to answer, or for not disclosing complete information in response to, questions asked pursuant to paragraphs (d)(1), (d)(7), (d)(8), or (d)(9) of this section? ☒ Yes ☐ No

## 115.41 (i)

- Has the agency implemented appropriate controls on the dissemination within the facility of responses to questions asked pursuant to this standard in order to ensure that sensitive information is not exploited to the inmate's detriment by staff or other inmates? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☒ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 29-35 & 49, addresses the mandates of this standard. Agency and complex policy requires the use of a screening instrument (reviewed by auditor) to determine proper housing, bed assignment, work assignment, education and other program assignments, with the goal of keeping inmates at high risk of being sexually abused/sexually harassed separate from those inmates who are at high risk of being sexually abusive. Bureau policy requires all inmates to be screened within 72 hours of arrival; however, they are routinely screened on the day of arrival. Unit team staff utilizes the intake screening form, reviews the inmate's Pre-Sentence Investigation and central file to determine whether there is any history of sexually aggressive behavior or sexual victimization. Based on the information of the screening process, any inmates with risk factors are referred by Unit Team for follow-up with Psychology Services. During the team meeting inmates are asked if they have any concerns for their safety and review documents of any victim/predator behavior. Case managers meet with inmates on a regular basis and the team will reconvene based on case manager or psychology concerns for reassessment of victimization or predator behavior.    Regardless of whether inmates are referred by unit team staff, Psychology Services staff conducts intake screening on all inmates who arrive at the institution within 14 days. Psychology staff uses the totality of the information, along with behavioral observations of the inmate to make an estimation on the level of risk.

Agency policy prohibits inmates from being disciplined for refusing to answer or for not disclosing complete information in response to questions regarding their mental/physical health, developmental disability, sexual preferences, sexual victimization history and perception of vulnerability. Housing and program assignments are made on a case-by-case basis and inmates are not placed in housing units based solely on their sexual identification or status. Psychology staff does an excellent job in assessing and reassessing all inmates for potential victimization and/or potential perpetrator.  Careful housing assignment placement (in a housing unit with additional supervision) or other appropriate action would then be considered to address the inmate's needs.  Any information received after intake is immediately considered and may result in a change in housing or other necessary action. Status reassessments, by policy, will occur within 30 days of arrival.  Inmates who arrived within the last 12 months stated they were asked if they had been abused, what was their sexual orientation, and could they be in danger for abuse.  Identified victims were also asked again (within 30 days) if they needed counseling or if they felt that they were in danger of abuse. Staff and inmate interviews, a review of documentation, and observations of the intake process confirmed this information. The auditor reviewed documentation of classification assessments and reassessments and determined that the screenings for victimization and abusiveness conducted exceed compliance with the standards.

## Standard 115.42: Use of screening information

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.42 (a)**

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Housing Assignments? ☒ Yes ☐ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Bed assignments? ☒ Yes ☐ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Work Assignments? ☒ Yes ☐ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Education Assignments? ☒ Yes ☐ No

- Does the agency use information from the risk screening required by § 115.41, with the goal of keeping separate those inmates at high risk of being sexually victimized from those at high risk of being sexually abusive, to inform: Program Assignments? ☒ Yes ☐ No

## 115.42 (b)

- Does the agency make individualized determinations about how to ensure the safety of each inmate? ☒ Yes ☐ No

## 115.42 (c)

- When deciding whether to assign a transgender or intersex inmate to a facility for male or female inmates, does the agency consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether a placement would present management or security problems (NOTE: if an agency by policy or practice assigns inmates to a male or female facility on the basis of anatomy alone, that agency is not in compliance with this standard)? ☒ Yes ☐ No

- When making housing or other program assignments for transgender or intersex inmates, does the agency consider on a case-by-case basis whether a placement would ensure the inmate's health and safety, and whether a placement would present management or security problems? ☒ Yes ☐ No

## 115.42 (d)

- Are placement and programming assignments for each transgender or intersex inmate reassessed at least twice each year to review any threats to safety experienced by the inmate? ☒ Yes ☐ No

## 115.42 (e)

- Are each transgender or intersex inmate's own views with respect to his or her own safety given serious consideration when making facility and housing placement decisions and programming assignments? ☒ Yes ☐ No

**115.42 (f)**

- Are transgender and intersex inmates given the opportunity to shower separately from other inmates? ☒ Yes ☐ No

**115.42 (g)**

- Unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting lesbian, gay, bisexual, transgender, or intersex inmates, does the agency always refrain from placing: lesbian, gay, and bisexual inmates in dedicated facilities, units, or wings solely on the basis of such identification or status? ☒ Yes ☐ No

- Unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting lesbian, gay, bisexual, transgender, or intersex inmates, does the agency always refrain from placing: transgender inmates in dedicated facilities, units, or wings solely on the basis of such identification or status? ☒ Yes ☐ No

- Unless placement is in a dedicated facility, unit, or wing established in connection with a consent decree, legal settlement, or legal judgment for the purpose of protecting lesbian, gay, bisexual, transgender, or intersex inmates, does the agency always refrain from placing: intersex inmates in dedicated facilities, units, or wings solely on the basis of such identification or status? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 24, 26 & 33 and IS 5324.12 meet the mandates of this standard. Agency and complex policy requires the use of a screening instrument (reviewed by auditor) to determine proper housing, bed assignment, work assignment, education and other program assignments, with the goal of keeping inmates at high risk of being sexually abused/sexually harassed separate from those inmates who are at a high risk of being sexually abusive. Housing and program assignments are made on a case-by-case basis.

There were six self-identified transgender inmates interviewed. The staff does an excellent job addressing all the needs of the transgender inmates. During the audit, risk management staff indicated transgender and intersex inmates are reassessed bi-annually and their own views with respect to safety are given serious consideration. There were no intersex inmates at the complex during the onsite audit. Any special issues with transgenders are discussed in the monthly multi-disciplinary C-CARE meetings. Additionally, transgenders are given the opportunity to shower separately from other inmates. Operating procedures provide guidance consistent with the requirements of PREA standards relative to managing transgender inmates. The complex does not have a designated unit or housing sections for gay, bisexual, transgender, or intersex offenders. The transgender inmates interviewed indicated that they can request a card which allows them to request to be pat searched by female staff. The card has to be approved by the Warden. Based on a review of policies, tracking reports, and upon interviews conducted with classification staff, the information gained from propensity screening upon intake allows for housing and programming decisions consistent with the objectives of the PREA. Interviews with staff and the transgender inmates, as well as an examination of documentation/policy, confirm the complex is in compliance with this standard.

## Standard 115.43: Protective Custody

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.43 (a)

- Does the facility always refrain from placing inmates at high risk for sexual victimization in involuntary segregated housing unless an assessment of all available alternatives has been made, and a determination has been made that there is no available alternative means of separation from likely abusers? ☒ Yes ☐ No

- If a facility cannot conduct such an assessment immediately, does the facility hold the inmate in involuntary segregated housing for less than 24 hours while completing the assessment? ☒ Yes ☐ No

### 115.43 (b)

- Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Programs to the extent possible? ☒ Yes ☐ No

- Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Privileges to the extent possible? ☒ Yes ☐ No

- Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Education to the extent possible? ☒ Yes ☐ No

- Do inmates who are placed in segregated housing because they are at high risk of sexual victimization have access to: Work opportunities to the extent possible? ☒ Yes ☐ No

- If the facility restricts access to programs, privileges, education, or work opportunities, does the facility document: The opportunities that have been limited? ☒ Yes ☐ No

- If the facility restricts access to programs, privileges, education, or work opportunities, does the facility document: The duration of the limitation? ☒ Yes   ☐ No

- If the facility restricts access to programs, privileges, education, or work opportunities, does the facility document: The reasons for such limitations? ☒ Yes   ☐ No

## 115.43 (c)

- Does the facility assign inmates at high risk of sexual victimization to involuntary segregated housing only until an alternative means of separation from likely abusers can be arranged? ☒ Yes   ☐ No

- Does such an assignment not ordinarily exceed a period of 30 days? ☒ Yes   ☐ No

## 115.43 (d)

- If an involuntary segregated housing assignment is made pursuant to paragraph (a) of this section, does the facility clearly document: The basis for the facility's concern for the inmate's safety? ☒ Yes   ☐ No

- If an involuntary segregated housing assignment is made pursuant to paragraph (a) of this section, does the facility clearly document: The reason why no alternative means of separation can be arranged? ☒ Yes   ☐ No

## 115.43 (e)

- In the case of each inmate who is placed in involuntary segregation because he/she is at high risk of sexual victimization, does the facility afford a review to determine whether there is a continuing need for separation from the general population EVERY 30 DAYS? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 34 & 35 a-d, addresses the mandates of this standard. Agency policy states that inmates at high risk for sexual victimization shall not be placed in the SHU unless an assessment of all available alternatives has been made and there is no available means of separating the victim from the abuser. The inmates are reassessed every seven days after entering the SHU. There were no inmates at risk of sexual victimization held in the SHU in the past 12 months for one to 24 hours awaiting completion of an assessment. There were no inmates at risk of sexual victimization who were assigned to the SHU in the past 12 months for longer than 30 days while awaiting alternative placement.

Mental health and unit staff meet with each inmate in SHU status at least once each week. A Safeguarding of Inmates Alleging Sexual Abuse/Assault Allegation Form is completed when considering all appropriate alternatives for safeguarding alleged inmate victims. Interviews with staff assigned to the SHU and other employees, an examination of the SHU operations and an examination of policy/documentation confirm the complex's compliance with this standard.

# REPORTING

## Standard 115.51: Inmate reporting

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.51 (a)

- Does the agency provide multiple internal ways for inmates to privately report: Sexual abuse and sexual harassment? ☒ Yes ☐ No

- Does the agency provide multiple internal ways for inmates to privately report: Retaliation by other inmates or staff for reporting sexual abuse and sexual harassment? ☒ Yes ☐ No

- Does the agency provide multiple internal ways for inmates to privately report: Staff neglect or violation of responsibilities that may have contributed to such incidents? ☒ Yes ☐ No

### 115.51 (b)

- Does the agency also provide at least one way for inmates to report sexual abuse or sexual harassment to a public or private entity or office that is not part of the agency? ☒ Yes ☐ No

- Is that private entity or office able to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials? ☒ Yes ☐ No

- Does that private entity or office allow the inmate to remain anonymous upon request? ☒ Yes ☐ No

- Are inmates detained solely for civil immigration purposes provided information on how to contact relevant consular officials and relevant officials at the Department of Homeland Security? ☒ Yes ☐ No

**115.51 (c)**

- Does staff accept reports of sexual abuse and sexual harassment made verbally, in writing, anonymously, and from third parties? ⊠ Yes ☐ No

- Does staff promptly document any verbal reports of sexual abuse and sexual harassment? ⊠ Yes ☐ No

**115.51 (d)**

- Does the agency provide a method for staff to privately report sexual abuse and sexual harassment of inmates? ⊠ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

⊠ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 36 a-d; PREA Notices; and the A&O Handbook (English and Spanish) address the mandates of this standard. A review of supporting documentation and staff/inmate interviews indicated that there are multiple ways (verbally, in writing, anonymously, privately, and from a third party) for inmates to report sexual abuse/sexual harassment. The complex has procedures in place for staff to document all allegations. Throughout the complex, there are posters and other documents on display which also explain reporting methods. During the tour of the complex, several TRULINCS computers were observed in each housing unit. Inmates were able to demonstrate to the auditor how to log into the TRULINCS computer system and file a PREA report. Staff members promptly accept and document all verbal, written, anonymous, private and third-party reports of alleged abuse. Family and friends of inmates may report sexual abuse/harassment by using the BOP website, phoning the OIG or contacting complex staff. All interviewed inmates confirmed awareness of the multiple methods of reporting sexual abuse/sexual harassment allegations. Inmates at the complex are not detained solely for civil immigration purposes. Interviews with staff and inmates, the observation of posters addressing reporting methods and an examination of policy/documentation confirm the complex's compliance with this standard.

## Standard 115.52: Exhaustion of administrative remedies

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.52 (a)**

- Is the agency exempt from this standard? NOTE: The agency is exempt ONLY if it does not have administrative procedures to address inmate grievances regarding sexual abuse. This does not mean the agency is exempt simply because an inmate does not have to or is not ordinarily expected to submit a grievance to report sexual abuse. This means that as a matter of explicit policy, the agency does not have an administrative remedies process to address sexual abuse. ☒ Yes  ☐ No  ☐ NA

**115.52 (b)**

- Does the agency permit inmates to submit a grievance regarding an allegation of sexual abuse without any type of time limits? (The agency may apply otherwise-applicable time limits to any portion of a grievance that does not allege an incident of sexual abuse.) (N/A if agency is exempt from this standard.) ☒ Yes  ☐ No  ☐ NA

- Does the agency always refrain from requiring an inmate to use any informal grievance process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse? (N/A if agency is exempt from this standard.) ☒ Yes  ☐ No  ☐ NA

**115.52 (c)**

- Does the agency ensure that: An inmate who alleges sexual abuse may submit a grievance without submitting it to a staff member who is the subject of the complaint? (N/A if agency is exempt from this standard.) ☒ Yes  ☐ No  ☐ NA

- Does the agency ensure that: Such grievance is not referred to a staff member who is the subject of the complaint? (N/A if agency is exempt from this standard.) ☒ Yes  ☐ No  ☐ NA

**115.52 (d)**

- Does the agency issue a final agency decision on the merits of any portion of a grievance alleging sexual abuse within 90 days of the initial filing of the grievance? (Computation of the 90-day time period does not include time consumed by inmates in preparing any administrative appeal.) (N/A if agency is exempt from this standard.) ☒ Yes  ☐ No  ☐ NA

- If the agency claims the maximum allowable extension of time to respond of up to 70 days per 115.52(d)(3) when the normal time period for response is insufficient to make an appropriate decision, does the agency notify the inmate in writing of any such extension and provide a date by which a decision will be made? (N/A if agency is exempt from this standard.) ☒ Yes  ☐ No  ☐ NA

- At any level of the administrative process, including the final level, if the inmate does not receive a response within the time allotted for reply, including any properly noticed extension, may an inmate consider the absence of a response to be a denial at that level? (N/A if agency is exempt from this standard.) ☒ Yes  ☐ No  ☐ NA

**115.52 (e)**

- Are third parties, including fellow inmates, staff members, family members, attorneys, and outside advocates, permitted to assist inmates in filing requests for administrative remedies relating to allegations of sexual abuse? (N/A if agency is exempt from this standard.)
  ☒ Yes   ☐ No   ☐ NA

- Are those third parties also permitted to file such requests on behalf of inmates? (If a third-party files such a request on behalf of an inmate, the facility may require as a condition of processing the request that the alleged victim agree to have the request filed on his or her behalf, and may also require the alleged victim to personally pursue any subsequent steps in the administrative remedy process.) (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

- If the inmate declines to have the request processed on his or her behalf, does the agency document the inmate's decision? (N/A if agency is exempt from this standard.)
  ☒ Yes   ☐ No   ☐ NA

**115.52 (f)**

- Has the agency established procedures for the filing of an emergency grievance alleging that an inmate is subject to a substantial risk of imminent sexual abuse? (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

- After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, does the agency immediately forward the grievance (or any portion thereof that alleges the substantial risk of imminent sexual abuse) to a level of review at which immediate corrective action may be taken? (N/A if agency is exempt from this standard.).
  ☒ Yes   ☐ No   ☐ NA

- After receiving an emergency grievance described above, does the agency provide an initial response within 48 hours? (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

- After receiving an emergency grievance described above, does the agency issue a final agency decision within 5 calendar days? (N/A if agency is exempt from this standard.)
  ☒ Yes   ☐ No   ☐ NA

- Does the initial response and final agency decision document the agency's determination whether the inmate is in substantial risk of imminent sexual abuse? (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

- Does the initial response document the agency's action(s) taken in response to the emergency grievance? (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

- Does the agency's final decision document the agency's action(s) taken in response to the emergency grievance? (N/A if agency is exempt from this standard.) ☒ Yes   ☐ No   ☐ NA

**115.52 (g)**

- If the agency disciplines an inmate for filing a grievance related to alleged sexual abuse, does it do so ONLY where the agency demonstrates that the inmate filed the grievance in bad faith? (N/A if agency is exempt from this standard.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐     **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 1330.18, Administrative Remedy Program, pages 1, 2, 14, 15 &16, addresses the mandates of this standard. All allegations of sexual abuse/sexual harassment, when received by staff, will immediately be referred for investigation. Inmates are not required to use an informal grievance process and procedures also allow an inmate to submit a grievance alleging sexual abuse without submitting it to the staff member who is the subject of the complaint. Additionally, policy also prohibits the investigation of the allegation by either staff alleged to be involved in the incident or any staff who may be under their supervision. Policy states that there is no time frame for filing a grievance relating to sexual abuse/sexual harassment. Allegations of physical abuse by staff shall be referred to the OIA, in accordance with procedures established for such referrals. Policy also addresses the filing of emergency administrative remedy requests. If an inmate files the emergency grievance with the institution and believes he is under a substantial risk of imminent sexual abuse, an expedited response is required to be provided within 48 hours. Best efforts are made to provide Regional Office and Central Office expedited appeal responses within five calendar days. If an inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger, if the remedy became known at the institution, the inmate may submit the remedy directly to the appropriate Regional Office. There is no prohibition that limits third parties, including fellow inmates, staff members, family members, attorneys and outside victim advocates in assisting inmates in filing requests for grievances relating to allegations of sexual abuse or filing such requests on behalf of inmates.

There were no grievances filed involving PREA related issues during the past 12 months. There were no grievances alleging sexual abuse that involved an extension due to the final decision not being reached within 90 days. Additionally, there were no grievances alleging sexual abuse filed by inmates in which the inmate declined third-party assistance. Inmates are held accountable for manipulative behavior and false allegations. Disciplinary action would

generally be taken if a grievance was filed in bad faith. Compliance was determined by review of policy, grievance logs and interviews with grievance coordinator.

## Standard 115.53: Inmate access to outside confidential support services

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.53 (a)**

- Does the facility provide inmates with access to outside victim advocates for emotional support services related to sexual abuse by giving inmates mailing addresses and telephone numbers, including toll-free hotline numbers where available, of local, State, or national victim advocacy or rape crisis organizations? ☒ Yes  ☐ No

- Does the facility provide persons detained solely for civil immigration purposes mailing addresses and telephone numbers, including toll-free hotline numbers where available of local, State, or national immigrant services agencies? ☒ Yes  ☐ No

- Does the facility enable reasonable communication between inmates and these organizations and agencies, in as confidential a manner as possible? ☒ Yes  ☐ No

**115.53 (b)**

- Does the facility inform inmates, prior to giving them access, of the extent to which such communications will be monitored and the extent to which reports of abuse will be forwarded to authorities in accordance with mandatory reporting laws? ☒ Yes  ☐ No

**115.53 (c)**

- Does the agency maintain or attempt to enter into memoranda of understanding or other agreements with community service providers that are able to provide inmates with confidential emotional support services related to sexual abuse? ☒ Yes  ☐ No

- Does the agency maintain copies of agreements or documentation showing attempts to enter into such agreements? ☒ Yes  ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 37; IS 5324.12; and the A&O Handbook (English and Spanish) address the mandates of this standard. The FCC has established a MOU with a victim advocate crisis center, Victim advocate services are available through the Gratuitous Services Agreement with the Council on Domestic Abuse, Inc. in Terre Haute to provide victim services to inmates. The auditor contacted the Executive Director of the Council to discuss and confirm the agreement to provide rape crisis intervention services. She indicated that they have a good partnership. Psychology complex staff have been trained to provide counseling and victim advocacy services if needed. Inmates have access to the National Sexual Abuse Hotline. Inmates are advised of the procedures to seek assistance from outside providers and complex staff. Staff also provide contact information and confidential communication services, as reasonably as possible. "Confidential" communications under this section are distinguished from privileged communications, such as in an attorney-client relationship. The inmate handbook outlines the process to obtain the contact information through the Psychology Department. Inmates stated that there was information in the Inmate Handbook and on Trulincs concerning services available outside the complex to provide counseling and/or treatment for sexual abuse. Most stated that they thought there were some addresses and telephone numbers available to ask for services.

## Standard 115.54: Third-party reporting

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.54 (a)**

- Has the agency established a method to receive third-party reports of sexual abuse and sexual harassment? ☒ Yes  ☐ No

- Has the agency distributed publicly information on how to report sexual abuse and sexual harassment on behalf of an inmate? ☒ Yes  ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The BOP SABPIP (English and Spanish); A&O Handbook (English and Spanish); PREA Posters: How You Can Report (English and Spanish); the OIG address and the BOP website: ([www.bop.gov](www.bop.gov)) meet the mandates of this standard. The website and posted notices assist in the third-party reporting of sexual abuse/sexual harassment allegations. The inmates interviewed indicated they were aware of third-party reporting. A National Sexual Abuse Hotline (800-656-HOPE) is also available to the inmate population for reporting incidents of sexual abuse/sexual harassment. Calls to toll-free telephone numbers must be coordinated with a member of the unit team, per the SABPIP. This standard is met based on a review of documentation and interviews.

## OFFICIAL RESPONSE FOLLOWING AN INMATE REPORT

## Standard 115.61: Staff and agency reporting duties

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.61 (a)**

- Does the agency require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency? ☒ Yes   ☐ No

- Does the agency require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding retaliation against inmates or staff who reported an incident of sexual abuse or sexual harassment? ☒ Yes   ☐ No

- Does the agency require all staff to report immediately and according to agency policy any knowledge, suspicion, or information regarding any staff neglect or violation of responsibilities that may have contributed to an incident of sexual abuse or sexual harassment or retaliation? ☒ Yes   ☐ No

**115.61 (b)**

- Apart from reporting to designated supervisors or officials, does staff always refrain from revealing any information related to a sexual abuse report to anyone other than to the extent necessary, as specified in agency policy, to make treatment, investigation, and other security and management decisions? ☒ Yes   ☐ No

**115.61 (c)**

- Unless otherwise precluded by Federal, State, or local law, are medical and mental health practitioners required to report sexual abuse pursuant to paragraph (a) of this section? ☒ Yes   ☐ No

- Are medical and mental health practitioners required to inform inmates of the practitioner's duty to report, and the limitations of confidentiality, at the initiation of services? ☒ Yes ☐ No

**115.61 (d)**

- If the alleged victim is under the age of 18 or considered a vulnerable adult under a State or local vulnerable persons statute, does the agency report the allegation to the designated State or local services agency under applicable mandatory reporting laws? ☒ Yes ☐ No

**115.61 (e)**

- Does the facility report all allegations of sexual abuse and sexual harassment, including third-party and anonymous reports, to the facility's designated investigators? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 37 & 38; IS 5324.12; and PS 3420.11 address the mandates of this standard. Staff, contractors and volunteers must report and respond to allegations of sexually abusive behavior, regardless of the source of the report. Staff members interviewed were aware of their duty to immediately report all allegations of sexual abuse, sexual harassment and retaliation relevant to the PREA standards. The reporting is ordinarily made to the shift operations lieutenant but could be made privately or to a third party (FBI, OIG or OIA). Officers produced a card during the interview, issued by the complex, outlining all actions to be taken by staff who became aware of an allegation of sexual abuse or harassment. Policy requires the information concerning the identity of the alleged inmate victim and the specific facts of the case to be shared with staff on a need-to-know basis, because of their involvement with the victim's welfare and/or the investigation of the incident. The complex does not house inmates under the age of 18. A review of established policy, as well as staff interviews, support the finding that the complex is in compliance with this standard.

## Standard 115.62: Agency protection duties

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.62 (a)**

- When the agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, does it take immediate action to protect the inmate? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

    ☐    **Exceeds Standard** (*Substantially exceeds requirement of standards*)

    ☒    **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

    ☐    **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 38, addresses the mandates of this standard. Staff members interviewed were aware of their duties and responsibilities when they become aware or suspect an inmate is being or has been sexually abused or sexually harassed. All staff indicated they would act immediately to protect the inmate, to include separating the victim/predator, securing the scene to protect possible evidence, preventing the destruction of potential evidence and contacting the operations lieutenant and medical staff. In the past 12 months, there were no instances in which the FCC Terre Haute staff determined that an inmate was subject to a substantial risk of imminent sexual abuse.

## Standard 115.63: Reporting to other confinement facilities

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.63 (a)**

- Upon receiving an allegation that an inmate was sexually abused while confined at another facility, does the head of the facility that received the allegation notify the head of the facility or appropriate office of the agency where the alleged abuse occurred? ☒ Yes   ☐ No

**115.63 (b)**

- Is such notification provided as soon as possible, but no later than 72 hours after receiving the allegation? ☒ Yes   ☐ No

**115.63 (c)**

- Does the agency document that it has provided such notification? ☒ Yes ☐ No

**115.63 (d)**

- Does the facility head or agency office that receives such notification ensure that the allegation is investigated in accordance with these standards? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 39 & 40, addresses the mandates of this standard. Policy requires that any inmate allegation of sexual abuse that occurred while confined at another complex be reported to the head of the complex where the alleged abuse occurred within 72 hours of receipt of the allegation. Procedures are in place that require the Warden to immediately notify the Chief Executive Officer of the other confinement complex, in writing, of the nature of the sexual abuse allegation. When the inmate reports sexual abuse/sexual harassment from state, non-Bureau privatized facilities, jails, juvenile facilities, or Residential Reentry Centers, the Warden contacts the appropriate office of the complex and/or notifies the Residential Reentry Management Branch of the BOP, if appropriate. The notification is to occur as soon as possible, but always within 72 hours of receiving the allegation. Policy also requires that an investigation be initiated. In the past 12 months, there were two allegations from an inmate that he was abused while confined at another complex. Investigative files for each allegation were reviewed. The SIS staff notify Psychology staff and Retaliation staff as they initiate an investigation for all allegations of sexual abuse/harassment. During the audit period, one case was received from another complex who alleged abuse while at FCC Terre Haute. This was confirmed by interviewing the IPCM, SIS and Warden.

## Standard 115.64: Staff first responder duties

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.64 (a)**

- Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Separate the alleged victim and abuser? ☒ Yes ☐ No

- Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Preserve and protect any crime scene until appropriate steps can be taken to collect any evidence? ☒ Yes ☐ No

- Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Request that the alleged victim not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating, if the abuse occurred within a time period that still allows for the collection of physical evidence? ☒ Yes ☐ No

- Upon learning of an allegation that an inmate was sexually abused, is the first security staff member to respond to the report required to: Ensure that the alleged abuser does not take any actions that could destroy physical evidence, including, as appropriate, washing, brushing teeth, changing clothes, urinating, defecating, smoking, drinking, or eating, if the abuse occurred within a time period that still allows for the collection of physical evidence? ☒ Yes ☐ No

**115.64 (b)**

- If the first staff responder is not a security staff member, is the responder required to request that the alleged victim not take any actions that could destroy physical evidence, and then notify security staff? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 40 addresses the mandates of this standard. All staff members interviewed were extremely knowledgeable concerning their first responder duties and responsibilities upon learning of an allegation of sexual abuse/sexual harassment. Staff indicated they would separate the inmates, secure the scene, prevent the destruction of any evidence and contact the operations lieutenant and medical staff. All staff carry a laminated first responder card. This

card lists all the steps necessary for a first responder in the event of a PREA related incident. The shift lieutenant would continue to protect the victim and notify medical, mental health, and the administrative/executive staff. In the past 12 months, there were 30 allegations that an inmate was sexually abused. Of these, two allegations allowed for collection of physical evidence. Compliance was determined through review of investigation files, interviews with the SIA, SIS Lieutenant, Medical Staff, Retaliation Staff and the Chief Psychologist.

## Standard 115.65: Coordinated response

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

#### 115.65 (a)

- Has the facility developed a written institutional plan to coordinate actions among staff first responders, medical and mental health practitioners, investigators, and facility leadership taken in response to an incident of sexual abuse? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12 and DOJ/BOP One Source First Responder Reference Guide address the mandates of this standard. The policies were reviewed by the auditor. The local policy specifies the guidelines and procedures that prevent sexual abuse and provide for prompt and effective intervention, in the event a case of abuse occurs. Local policy also includes procedures for the investigation, discipline and prosecution of the assailant or abuser. The First Responder Reference Guide details first responder duties, reporting procedures, physical evidence collection/preservation and medical/mental health care responsibilities. The ONE Source First Responder Reference Guide was developed to assist staff in responding to allegations of prohibited and/or illegal sexually abusive behavior.  Interviews with all categories of staff indicated an adequate understanding of their roles as part of a coordinated response. Compliance was determined through the review of policies, the first responder reference guide, investigative files, interviews with SIS staff, correctional staff, general conversations with case managers, Human Resource Manager and IPCM.

## Standard 115.66: Preservation of ability to protect inmates from contact with abusers

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.66 (a)**

- Are both the agency and any other governmental entities responsible for collective bargaining on the agency's behalf prohibited from entering into or renewing any collective bargaining agreement or other agreement that limits the agency's ability to remove alleged staff sexual abusers from contact with any inmates pending the outcome of an investigation or of a determination of whether and to what extent discipline is warranted? ☒ Yes   ☐ No

**115.66 (b)**

- Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

The Collective Bargaining Agreement (CBA), examined by the auditor, between the BOP and the Council of Prison Locals, American Federation of Government Employees, dated July 21, 2014-July 20, 2017, complies with this standard. The agreement does not limit the agency's ability to remove alleged staff sexual abusers from contact with any inmates pending the outcome of an investigation or of a determination of whether and to what extent discipline is warranted. The Warden and a Human Resources Specialist were interviewed and verified information provided during the Pre-Audit Questionnaire. There were no incidents requiring protection for inmates during the last 12 months. Compliance was confirmed through review of the collective bargaining agreement, and interviews with administrative staff.

## Standard 115.67: Agency protection against retaliation

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.67 (a)**

- Has the agency established a policy to protect all inmates and staff who report sexual abuse or sexual harassment or cooperate with sexual abuse or sexual harassment investigations from retaliation by other inmates or staff? ☒ Yes ☐ No

- Has the agency designated which staff members or departments are charged with monitoring retaliation? ☒ Yes ☐ No

**115.67 (b)**

- Does the agency employ multiple protection measures, such as housing changes or transfers for inmate victims or abusers, removal of alleged staff or inmate abusers from contact with victims, and emotional support services for inmates or staff who fear retaliation for reporting sexual abuse or sexual harassment or for cooperating with investigations? ☒ Yes ☐ No

**115.67 (c)**

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor the conduct and treatment of inmates or staff who reported the sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor the conduct and treatment of inmates who were reported to have suffered sexual abuse to see if there are changes that may suggest possible retaliation by inmates or staff? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Act promptly to remedy any such retaliation? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor any inmate disciplinary reports? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor inmate housing changes? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor inmate program changes? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor negative performance reviews of staff? ☒ Yes ☐ No

- Except in instances where the agency determines that a report of sexual abuse is unfounded, for at least 90 days following a report of sexual abuse, does the agency: Monitor reassignments of staff? ☒ Yes ☐ No

- Does the agency continue such monitoring beyond 90 days if the initial monitoring indicates a continuing need? ☒ Yes ☐ No

**115.67 (d)**

- In the case of inmates, does such monitoring also include periodic status checks? ☒ Yes ☐ No

**115.67 (e)**

- If any other individual who cooperates with an investigation expresses a fear of retaliation, does the agency take appropriate measures to protect that individual against retaliation? ☒ Yes ☐ No

**115.67 (f)**

- Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐     **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 43 & 44 a-e, address the mandates of this standard. The policy prohibits any type of retaliation against any staff or inmate who reports sexual abuse or sexual harassment or cooperates in related investigations. The Associate Warden/IPCM is charged with monitoring retaliation. During the interview, he stated he follows up on all 30-, 60- and 90-day reviews to ensure policy is being enforced and conducts periodic status checks on the frequency of incident reports, housing reassignments and negative performance reviews/staff job reassignments. In the event of possible retaliation, the Associate Warden indicated he would monitor the situation indefinitely. He keeps a Retaliation Log providing dates that inmate

was interviewed, and files reviewed to monitor retaliation. Compliance with this standard was determined by a review of established policy and supporting documentation and staff interviews.

## Standard 115.68: Post-allegation protective custody

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.68 (a)**

- Is any and all use of segregated housing to protect an inmate who is alleged to have suffered sexual abuse subject to the requirements of § 115.43? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12 addresses the requirements of the standard. Policy requires staff to assess and consider all appropriate alternatives for safeguarding alleged inmate victims of sexual abuse/sexual harassment. Staff must first consider other alternatives based on the circumstances of the allegation before considering the placement of an inmate in protective custody (SHU), placing him in another housing unit or transferring the inmate to another complex. To aid in that decision, policy requires the complex to complete the BOP's Safeguarding of Inmates Alleging Sexual Abuse/Assault Allegation Form. The form serves to document consideration of all options. Interviews with staff and the tour of the complex confirmed that there are usually viable alternatives to placing victims of sexual abuse/sexual harassment in the SHU. In practice, inmates are rarely placed in this status. To the extent possible, access to programs, privileges, education and work opportunities would not be limited to inmates placed in a SHU for the purposes of protective custody. The reasons would be documented for restricting access and the length of time the restrictions would last. There were no inmates placed in post-allegation protective custody status within the last twelve months until a determination was made to place him in a different housing unit. Compliance with this standard was determined by a review of policy and documentation, as well as a tour of the complex and staff interviews.

# INVESTIGATIONS

## Standard 115.71: Criminal and administrative agency investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.71 (a)

- When the agency conducts its own investigations into allegations of sexual abuse and sexual harassment, does it do so promptly, thoroughly, and objectively? [N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations. See 115.21(a).] ☒ Yes  ☐ No  ☐ NA

- Does the agency conduct such investigations for all allegations, including third party and anonymous reports? [N/A if the agency/facility is not responsible for conducting any form of criminal OR administrative sexual abuse investigations. See 115.21(a).] ☒ Yes  ☐ No  ☐ NA

### 115.71 (b)

- Where sexual abuse is alleged, does the agency use investigators who have received specialized training in sexual abuse investigations as required by 115.34? ☒ Yes  ☐ No

### 115.71 (c)

- Do investigators gather and preserve direct and circumstantial evidence, including any available physical and DNA evidence and any available electronic monitoring data? ☒ Yes  ☐ No

- Do investigators interview alleged victims, suspected perpetrators, and witnesses? ☒ Yes  ☐ No

- Do investigators review prior reports and complaints of sexual abuse involving the suspected perpetrator? ☒ Yes  ☐ No

### 115.71 (d)

- When the quality of evidence appears to support criminal prosecution, does the agency conduct compelled interviews only after consulting with prosecutors as to whether compelled interviews may be an obstacle for subsequent criminal prosecution? ☒ Yes  ☐ No

### 115.71 (e)

- Do agency investigators assess the credibility of an alleged victim, suspect, or witness on an individual basis and not on the basis of that individual's status as inmate or staff? ☒ Yes  ☐ No

- Does the agency investigate allegations of sexual abuse without requiring an inmate who alleges sexual abuse to submit to a polygraph examination or other truth-telling device as a condition for proceeding? ☒ Yes  ☐ No

**115.71 (f)**

- Do administrative investigations include an effort to determine whether staff actions or failures to act contributed to the abuse? ☒ Yes   ☐ No

- Are administrative investigations documented in written reports that include a description of the physical evidence and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings? ☒ Yes   ☐ No

**115.71 (g)**

- Are criminal investigations documented in a written report that contains a thorough description of the physical, testimonial, and documentary evidence and attaches copies of all documentary evidence where feasible? ☒ Yes   ☐ No

**115.71 (h)**

- Are all substantiated allegations of conduct that appears to be criminal referred for prosecution? ☒ Yes   ☐ No

**115.71 (i)**

- Does the agency retain all written reports referenced in 115.71(f) and (g) for as long as the alleged abuser is incarcerated or employed by the agency, plus five years? ☒ Yes   ☐ No

**115.71 (j)**

- Does the agency ensure that the departure of an alleged abuser or victim from the employment or control of the agency does not provide a basis for terminating an investigation? ☒ Yes   ☐ No

**115.71 (k)**

- Auditor is not required to audit this provision.

**115.71 (I)**

- When an outside entity investigates sexual abuse, does the facility cooperate with outside investigators and endeavor to remain informed about the progress of the investigation? (N/A if an outside agency does not conduct administrative or criminal sexual abuse investigations. See 115.21(a).) ☒ Yes   ☐ No   ☐ NA

**Auditor Overall Compliance Determination**

☐   **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒   **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 44-46 a-j, addresses the mandates of this standard. The SIS department is responsible for conducting administrative investigations within the complex and referring criminal investigations to the FBI and the OIG to determine if prosecution will be pursued. According to the Complex Warden, the complex fully cooperates with any outside agency who initiates an investigation. The SIS department serves as the complex liaison and provides requested information to outside agencies and provides access to the inmate. The credibility of an alleged victim, suspect or witness is assessed on an individual basis and is not determined by the person's status as inmate or staff. The agency does not require an inmate who alleges sexual abuse to submit to a polygraph examination or other truth assessment device as a condition for proceeding with the investigation of such an allegation. Seventeen investigations were reviewed with the SIS who conducted the administrative investigations. The investigations were assigned investigator staff within one work day. The retaliation monitoring was provided for 90 days and victim and abuser notification occurred within 45 days, unless the investigation is still pending an outcome. Compliance with this standard was determined by a review of policy/documentation, investigation case files and interviews with PREA Compliance Manager/Retaliation monitor and SIS staff who completed the investigations.

## Standard 115.72: Evidentiary standard for administrative investigations

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.72 (a)**

- Is it true that the agency does not impose a standard higher than a preponderance of the evidence in determining whether allegations of sexual abuse or sexual harassment are substantiated? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 46a, addresses the mandates of this standard. The evidence standard is a preponderance of the evidence in determining whether allegations of sexual abuse/sexual harassment are substantiated. Investigator training programs provide indepth clarification of this standard. When interviewed, the investigator was aware of the evidence standard. The evidence standard was utilized in the cases reviewed by the auditor.

## Standard 115.73: Reporting to inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.73 (a)**

- Following an investigation into an inmate's allegation that he or she suffered sexual abuse in an agency facility, does the agency inform the inmate as to whether the allegation has been determined to be substantiated, unsubstantiated, or unfounded? ☒ Yes ☐ No

**115.73 (b)**

- If the agency did not conduct the investigation into an inmate's allegation of sexual abuse in an agency facility, does the agency request the relevant information from the investigative agency in order to inform the inmate? (N/A if the agency/facility is responsible for conducting administrative and criminal investigations.) ☒ Yes ☐ No ☐ NA

**115.73 (c)**

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The staff member is no longer posted within the inmate's unit? ☒ Yes ☐ No

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The staff member is no longer employed at the facility? ☒ Yes ☐ No

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate has been released from custody, does the agency subsequently inform the inmate whenever: The agency learns that the staff member has been indicted on a charge related to sexual abuse in the facility? ☒ Yes ☐ No

- Following an inmate's allegation that a staff member has committed sexual abuse against the inmate, unless the agency has determined that the allegation is unfounded, or unless the inmate

has been released from custody, does the agency subsequently inform the inmate whenever: The agency learns that the staff member has been convicted on a charge related to sexual abuse within the facility? ☒ Yes   ☐ No

**115.73 (d)**

▪ Following an inmate's allegation that he or she has been sexually abused by another inmate, does the agency subsequently inform the alleged victim whenever: The agency learns that the alleged abuser has been indicted on a charge related to sexual abuse within the facility? ☒ Yes   ☐ No

▪ Following an inmate's allegation that he or she has been sexually abused by another inmate, does the agency subsequently inform the alleged victim whenever: The agency learns that the alleged abuser has been convicted on a charge related to sexual abuse within the facility? ☒ Yes   ☐ No

**115.73 (e)**

▪ Does the agency document all such notifications or attempted notifications? ☒ Yes   ☐ No

**115.73 (f)**

▪ Auditor is not required to audit this provision.

**Auditor Overall Compliance Determination**

☐    **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒    **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐    **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 45&46, address the mandates of this standard. There were 44 allegations of sexual abuse/sexual harassment and an investigation was initiated in each case. There are three investigations that are still pending. Inmates were notified of the outcome of all completed investigations, verbally or in writing, upon completion of the investigation by the SIA. Signed documentation indicating the inmate had received the outcome of the investigation of his allegation was reviewed by the auditor. Documentation is maintained in the investigative file. Compliance with this standard was determined by a review of policy, an examination of the written notifications and staff interviews.

| DISCIPLINE |
| --- |

## Standard 115.76: Disciplinary sanctions for staff

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.76 (a)**

- Are staff subject to disciplinary sanctions up to and including termination for violating agency sexual abuse or sexual harassment policies? ☒ Yes  ☐ No

**115.76 (b)**

- Is termination the presumptive disciplinary sanction for staff who have engaged in sexual abuse?  ☒ Yes  ☐ No

**115.76 (c)**

- Are disciplinary sanctions for violations of agency policies relating to sexual abuse or sexual harassment (other than actually engaging in sexual abuse) commensurate with the nature and circumstances of the acts committed, the staff member's disciplinary history, and the sanctions imposed for comparable offenses by other staff with similar histories? ☒ Yes  ☐ No

**115.76 (d)**

- Are all terminations for violations of agency sexual abuse or sexual harassment policies, or resignations by staff who would have been terminated if not for their resignation, reported to: Law enforcement agencies (unless the activity was clearly not criminal)? ☒ Yes  ☐ No

- Are all terminations for violations of agency sexual abuse or sexual harassment policies, or resignations by staff who would have been terminated if not for their resignation, reported to: Relevant licensing bodies? ☒ Yes  ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does*

*not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 3420.11, pages 6 & 7 and PS 5324.12 address the mandates of this standard. Employees are subject to disciplinary sanctions for violating agency sexual abuse or sexual harassment policies. There have been no reported cases of inmates engaging in sexual activity with staff in the past 12 months and no staff members were disciplined or terminated for violation of agency policy. The CBA (examined by auditor) between the BOP and Council of Prison Locals, American Federation of Government Employees, dated July 21, 2014-July 20, 2017, allows for disciplinary sanctions against staff, including termination, for the sexual abuse or sexual harassment of an inmate. All terminations for violations of agency sexual abuse or sexual harassment policies, or resignations by staff that would have been terminated if not for their resignation, may be reported to criminal investigators and to any law enforcement or relevant professional/certifying/licensing agencies, unless the activity was clearly not criminal. Compliance with this standard was determined by a review of policy/documentation and staff interviews.

## Standard 115.77: Corrective action for contractors and volunteers

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.77 (a)

- Is any contractor or volunteer who engages in sexual abuse prohibited from contact with inmates? ☒ Yes   ☐ No

- Is any contractor or volunteer who engages in sexual abuse reported to: Law enforcement agencies (unless the activity was clearly not criminal)? ☒ Yes   ☐ No

- Is any contractor or volunteer who engages in sexual abuse reported to: Relevant licensing bodies? ☒ Yes   ☐ No

### 115.77 (b)

- In the case of any other violation of agency sexual abuse or sexual harassment policies by a contractor or volunteer, does the facility take appropriate remedial measures, and consider whether to prohibit further contact with inmates? ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 3420.11 and PS 5324.12 address the requirements of the standard. Any contractor or volunteer who engages in sexual abuse/sexual harassment would be prohibited from contact with inmates and would be reported to the appropriate investigator, law enforcement, or relevant professional/licensing/certifying bodies, unless the activity was clearly not criminal in nature. In cases that were not criminal in nature, the complex would take appropriate remedial measures and consider whether to prohibit further contact with inmates. During the previous year, there were no incidents where a contractor or volunteer was accused or found guilty of sexual abuse or sexual harassment of an inmate. Compliance with this standard was determined by a review of policy and volunteer/contractor training files, as well as contractor and staff interviews.

## Standard 115.78: Disciplinary sanctions for inmates

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.78 (a)

- Following an administrative finding that an inmate engaged in inmate-on-inmate sexual abuse, or following a criminal finding of guilt for inmate-on-inmate sexual abuse, are inmates subject to disciplinary sanctions pursuant to a formal disciplinary process? ☒ Yes   ☐ No

### 115.78 (b)

- Are sanctions commensurate with the nature and circumstances of the abuse committed, the inmate's disciplinary history, and the sanctions imposed for comparable offenses by other inmates with similar histories? ☒ Yes   ☐ No

### 115.78 (c)

- When determining what types of sanction, if any, should be imposed, does the disciplinary process consider whether an inmate's mental disabilities or mental illness contributed to his or her behavior? ☒ Yes   ☐ No

### 115.78 (d)

- If the facility offers therapy, counseling, or other interventions designed to address and correct underlying reasons or motivations for the abuse, does the facility consider whether to require the offending inmate to participate in such interventions as a condition of access to programming and other benefits? ☒ Yes   ☐ No

### 115.78 (e)

- Does the agency discipline an inmate for sexual contact with staff only upon a finding that the staff member did not consent to such contact? ☒ Yes   ☐ No

## 115.78 (f)

- For the purpose of disciplinary action does a report of sexual abuse made in good faith based upon a reasonable belief that the alleged conduct occurred NOT constitute falsely reporting an incident or lying, even if an investigation does not establish evidence sufficient to substantiate the allegation? ☒ Yes   ☐ No

## 115.78 (g)

- Does the agency always refrain from considering non-coercive sexual activity between inmates to be sexual abuse? (N/A if the agency does not prohibit all sexual activity between inmates.) ☒ Yes   ☐ No   ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 48, and PS 5270.09, Inmate Discipline Program, addresses the mandates of this standard. Information on inmate disciplinary sanctions is provided as part of the complex orientation process upon entry into the complex. Inmates interviewed indicated their understanding of freedom to make allegations without consequences for making good faith allegations. The Inmate Discipline Program defines sexual assault of any person, involving non-consensual touching by force or threat of force, as the greatest severity level prohibited act. The program identifies inmates engaging in sexual acts and making sexual proposals or threats to another as a high severity level prohibited act. Consensual sex or sexual harassment of any nature is prohibited and will result in discipline. Consensual sex between inmates does not constitute sexual abuse. Sanctions are commensurate with the nature and circumstances of the abuse committed, along with the inmate's disciplinary history and the sanctions imposed for comparable offenses by other inmates with similar histories. Inmates are subject to disciplinary sanctions pursuant to the formal disciplinary process defined in the Inmate Discipline Program. The disciplinary process considers whether an inmate's mental disabilities or mental illness contributed to the inmate's behavior when determining what type

of sanction, if any, should be imposed. If mental disabilities or mental illness is a factor. The FCC Terre Haute considers the offer of therapy, counseling, or other interventions designed to address and correct underlying reasons or motivations for the abuse. FCC does not discipline inmates who make an allegation in good faith, even if an investigation does not establish evidence sufficient to substantiate the allegation. Compliance with this standard was determined by a review of policy/documentation, a review of the inmate discipline process, staff and inmate interviews.

<div style="border:1px solid black; text-align:center;">

# MEDICAL AND MENTAL CARE

</div>

## Standard 115.81: Medical and mental health screenings; history of sexual abuse

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.81 (a)

- If the screening pursuant to § 115.41 indicates that a prison inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, do staff ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening? (N/A if the facility is not a prison.)
  ☒ Yes   ☐ No   ☐ NA

### 115.81 (b)

- If the screening pursuant to § 115.41 indicates that a prison inmate has previously perpetrated sexual abuse, whether it occurred in an institutional setting or in the community, do staff ensure that the inmate is offered a follow-up meeting with a mental health practitioner within 14 days of the intake screening? (N/A if the facility is not a prison.) ☒ Yes   ☐ No   ☐ NA

### 115.81 (c)

- If the screening pursuant to § 115.41 indicates that a jail inmate has experienced prior sexual victimization, whether it occurred in an institutional setting or in the community, do staff ensure that the inmate is offered a follow-up meeting with a medical or mental health practitioner within 14 days of the intake screening? ☒ Yes   ☐ No

### 115.81 (d)

- Is any information related to sexual victimization or abusiveness that occurred in an institutional setting strictly limited to medical and mental health practitioners and other staff as necessary to inform treatment plans and security management decisions, including housing, bed, work, education, and program assignments, or as otherwise required by Federal, State, or local law?
  ☒ Yes   ☐ No

### 115.81 (e)

- Do medical and mental health practitioners obtain informed consent from inmates before reporting information about prior sexual victimization that did not occur in an institutional setting, unless the inmate is under the age of 18? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐     **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 29-30, 32 & 49, addresses the mandates of this standard. Interviews with medical and specialized staff confirm the complex has a very thorough system for collecting medical and mental health information and has the capacity to provide continued re-assessment and follow-up services. Inmates who disclosed prior victimization during screening were offered a follow-up meeting with a medical or mental health practitioner. Additionally, inmates who have previously perpetrated sexual abuse, as indicated during the screening, were offered a follow-up meeting with a mental health practitioner. Treatment services are offered without financial cost to the inmate. This was confirmed by observation and a review of intake screening documents.

Screening for prior sexual victimization in any setting is conducted by unit team staff during in-processing procedures. In-processing procedures also screen for previous sexually assaultive behavior in an institutional setting or in the community. Information related to sexual victimization or abusiveness is limited to medical and mental health practitioners and other staff with a need-to-know for treatment plans, security, housing, work, and program assignments and management decisions. Signed and dated informed consents are obtained from inmates before reporting prior sexual victimization which did not occur in an institutional setting. They offer on-going services for both victims and perpetrators with their psychology staff.

FCC Terre Haute does not house inmates under the age of 18. All screenings are recorded in the Bureau's Electronic Medical Record and Psychology Data System. All information is handled confidentially and interviews with intake screening staff support a finding that the complex is in compliance with this standard. Compliance was confirmed by review of policies, intake screening documents, and interviews with inmates identified as prior victimization during intake, and Chief Psychologist.

## Standard 115.82: Access to emergency medical and mental health services

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.82 (a)**

- Do inmate victims of sexual abuse receive timely, unimpeded access to emergency medical treatment and crisis intervention services, the nature and scope of which are determined by medical and mental health practitioners according to their professional judgment?
  ☒ Yes   ☐ No

**115.82 (b)**

- If no qualified medical or mental health practitioners are on duty at the time a report of recent sexual abuse is made, do security staff first responders take preliminary steps to protect the victim pursuant to § 115.62? ☒ Yes   ☐ No

- Do security staff first responders immediately notify the appropriate medical and mental health practitioners? ☒ Yes   ☐ No

**115.82 (c)**

- Are inmate victims of sexual abuse offered timely information about and timely access to emergency contraception and sexually transmitted infections prophylaxis, in accordance with professionally accepted standards of care, where medically appropriate? ☒ Yes   ☐ No

**115.82 (d)**

- Are treatment services provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident?
  ☒ Yes   ☐ No

**Auditor Overall Compliance Determination**

☐   **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒   **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐   **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 51; IS 5324.12; and PS 6031.04 address the mandates of this standard. Medical personnel are on duty 24 hours a day, seven days a week. Mental health providers are on-site five days per week and are also available for call-back during off duty hours. Information and access to care is offered to all inmate victims and perpetrators, as clinically indicated. Victim advocacy is offered through an MOU with the Council on Domestic Abuse, Inc. in Terre Haute. Agency policy prohibits inmate co-pays for medical treatment from being applied to victims of sexual abuse. Inmate victims of sexual abuse while incarcerated are offered information about and timely access to information on sexually transmitted infection prophylaxis, in accordance with professionally accepted standards of care, where medically appropriate. Compliance with this standard was determined by a review of policy/documentation and interviews with the Director of a victim advocate agency as well as Medical and Mental Health staff.

## Standard 115.83: Ongoing medical and mental health care for sexual abuse victims and abusers

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.83 (a)

- Does the facility offer medical and mental health evaluation and, as appropriate, treatment to all inmates who have been victimized by sexual abuse in any prison, jail, lockup, or juvenile facility? ☒ Yes ☐ No

### 115.83 (b)

- Does the evaluation and treatment of such victims include, as appropriate, follow-up services, treatment plans, and, when necessary, referrals for continued care following their transfer to, or placement in, other facilities, or their release from custody? ☒ Yes ☐ No

### 115.83 (c)

- Does the facility provide such victims with medical and mental health services consistent with the community level of care? ☒ Yes ☐ No

### 115.83 (d)

- Are inmate victims of sexually abusive vaginal penetration while incarcerated offered pregnancy tests? (N/A if all-male facility.) ☒ Yes ☐ No ☐ NA

### 115.83 (e)

- If pregnancy results from the conduct described in paragraph § 115.83(d), do such victims receive timely and comprehensive information about and timely access to all lawful pregnancy-related medical services? (N/A if all-male facility.) ☒ Yes ☐ No ☐ NA

### 115.83 (f)

- Are inmate victims of sexual abuse while incarcerated offered tests for sexually transmitted infections as medically appropriate? ☒ Yes ☐ No

**115.83 (g)**

- Are treatment services provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident? ☒ Yes ☐ No

**115.83 (h)**

- If the facility is a prison, does it attempt to conduct a mental health evaluation of all known inmate-on-inmate abusers within 60 days of learning of such abuse history and offer treatment when deemed appropriate by mental health practitioners? (NA if the facility is a jail.) ☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☒ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☐ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, page 51, addresses the mandates of this standard. Each complex will provide sexually abused victims with medical and mental health services consistent with the community level of care. Inmate victims of sexual abuse while incarcerated will be offered tests for sexually transmitted infections as medically appropriate. All treatment services are provided to the victim without financial cost and regardless of whether the victim names the abuser or cooperates with any investigation arising out of the incident. Each complex conducts a mental health evaluation of all known inmate-on-inmate abusers upon learning of such abuse history and offers treatment when deemed appropriate by mental health practitioners. Health services include medical and mental health aftercare plans to be developed no later than 30 days prior to the anticipated date of release for inmates subjected to sexual abuse. Compliance to the Standard was verified through review of policy, and interviews with medical staff and the Staff

Psychologist. The FCC exceeds this standard with the on-going assessment and follow-up services that they provide the inmates.

<div style="text-align: center; border: 1px solid black; padding: 5px;">

# DATA COLLECTION AND REVIEW

</div>

## Standard 115.86: Sexual abuse incident reviews

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.86 (a)**

- Does the facility conduct a sexual abuse incident review at the conclusion of every sexual abuse investigation, including where the allegation has not been substantiated, unless the allegation has been determined to be unfounded? ☒ Yes ☐ No

**115.86 (b)**

- Does such review ordinarily occur within 30 days of the conclusion of the investigation? ☒ Yes ☐ No

**115.86 (c)**

- Does the review team include upper-level management officials, with input from line supervisors, investigators, and medical or mental health practitioners? ☒ Yes ☐ No

**115.86 (d)**

- Does the review team: Consider whether the allegation or investigation indicates a need to change policy or practice to better prevent, detect, or respond to sexual abuse? ☒ Yes ☐ No

- Does the review team: Consider whether the incident or allegation was motivated by race; ethnicity; gender identity; lesbian, gay, bisexual, transgender, or intersex identification, status, or perceived status; gang affiliation; or other group dynamics at the facility? ☒ Yes ☐ No

- Does the review team: Examine the area in the facility where the incident allegedly occurred to assess whether physical barriers in the area may enable abuse? ☒ Yes ☐ No

- Does the review team: Assess the adequacy of staffing levels in that area during different shifts? ☒ Yes ☐ No

- Does the review team: Assess whether monitoring technology should be deployed or augmented to supplement supervision by staff? ☒ Yes ☐ No

- Does the review team: Prepare a report of its findings, including but not necessarily limited to determinations made pursuant to §§ 115.86(d)(1) - (d)(5), and any recommendations for improvement and submit such report to the facility head and PREA compliance manager? ☒ Yes ☐ No

**115.86 (e)**

▪ Does the facility implement the recommendations for improvement, or document its reasons for not doing so? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 52 & 53, address the mandates of this standard. Administrative and criminal investigations are completed on all allegations of sexual abuse/sexual harassment. The SIS, the FBI and/or the OIG conduct all investigations. The Special Investigative Services Lieutenant was interviewed and found to be extremely knowledgeable concerning his duties and responsibilities. FCC had thirty-five incidents that required a review team conduct an incident review at the end of the sexual abuse investigation. The review team completed all of the reviews within 30 days of the conclusion of the investigation. The review team meeting did take into consideration as to whether the incident was motivated by race, ethnicity, gender identity, status, perceived status or gang affiliation. The team also made a determination as to whether additional monitoring technology should be added to enhance staff supervision. The review team is comprised of upper-level management officials, to include the IPCM, Chief Psychologist, SIS Lieutenant, Health Services Administrator and the Unit Manager of the alleged victim. Based on staff interviews with an Incident Review Team member, staff members are knowledgeable of their responsibilities in carrying post investigation case reviews. Therefore, based on a review of files, adequate policy guidance, and knowledgeable staff to carry out these responsibilities, this complex is compliant with this PREA standard.

# Standard 115.87: Data collection

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.87 (a)**

- Does the agency collect accurate, uniform data for every allegation of sexual abuse at facilities under its direct control using a standardized instrument and set of definitions? ☒ Yes ☐ No

**115.87 (b)**

- Does the agency aggregate the incident-based sexual abuse data at least annually?
☒ Yes ☐ No

**115.87 (c)**

- Does the incident-based data include, at a minimum, the data necessary to answer all questions from the most recent version of the Survey of Sexual Violence conducted by the Department of Justice? ☒ Yes ☐ No

**115.87 (d)**

- Does the agency maintain, review, and collect data as needed from all available incident-based documents, including reports, investigation files, and sexual abuse incident reviews?
☒ Yes ☐ No

**115.87 (e)**

- Does the agency also obtain incident-based and aggregated data from every private facility with which it contracts for the confinement of its inmates? (N/A if agency does not contract for the confinement of its inmates.) ☒ Yes ☐ No ☐ NA

**115.87 (f)**

- Does the agency, upon request, provide all such data from the previous calendar year to the Department of Justice no later than June 30? (N/A if DOJ has not requested agency data.)
☒ Yes ☐ No ☐ NA

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 54 & 55, addresses the mandates of this standard. As confirmed by a review of documents, FCC Terre Haute collects accurate, uniform data for every allegation of

sexual abuse/sexual harassment by using a standardized instrument. The agency tracks information concerning sexual abuse utilizing SIS data, OIA data, inmate data, and SENTRY (BOP Data Management System) data. The data collected includes the information necessary to answer all questions from the most recent version of the Survey of Sexual Violence, conducted by the DOJ. The agency aggregates and reviews all data annually.

## Standard 115.88: Data review for corrective action

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.88 (a)**

- Does the agency review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by: Identifying problem areas? ☒ Yes ☐ No

- Does the agency review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by: Taking corrective action on an ongoing basis? ☒ Yes ☐ No

- Does the agency review data collected and aggregated pursuant to § 115.87 in order to assess and improve the effectiveness of its sexual abuse prevention, detection, and response policies, practices, and training, including by: Preparing an annual report of its findings and corrective actions for each facility, as well as the agency as a whole? ☒ Yes ☐ No

**115.88 (b)**

- Does the agency's annual report include a comparison of the current year's data and corrective actions with those from prior years and provide an assessment of the agency's progress in addressing sexual abuse ☒ Yes ☐ No

**115.88 (c)**

- Is the agency's annual report approved by the agency head and made readily available to the public through its website or, if it does not have one, through other means? ☒ Yes ☐ No

**115.88 (d)**

- Does the agency indicate the nature of the material redacted where it redacts specific material from the reports when publication would present a clear and specific threat to the safety and security of a facility? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12 addresses the requirements of the standard. The Bureau of Prisons and each complex reviews and assesses all sexual abuse/sexual harassment data at least annually to improve the effectiveness of its sexual abuse prevention, detection and response policies. The identification of trends, issues, or problematic areas are a priority and, if discovered, corrective action is initiated. The IPCM forwards data to the respective BOP Regional PREA Coordinator and then to the National BOP PREA Coordinator. An Annual Report is prepared and placed on the BOP website, ([www.bop.gov](www.bop.gov)). The Annual Report was reviewed by the auditor. Compliance with this standard was determined by a review of policy/documentation and staff interviews.

## Standard 115.89: Data storage, publication, and destruction

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.89 (a)**

▪ Does the agency ensure that data collected pursuant to § 115.87 are securely retained?
☒ Yes ☐ No

**115.89 (b)**

▪ Does the agency make all aggregated sexual abuse data, from facilities under its direct control and private facilities with which it contracts, readily available to the public at least annually through its website or, if it does not have one, through other means? ☒ Yes ☐ No

**115.89 (c)**

▪ Does the agency remove all personal identifiers before making aggregated sexual abuse data publicly available? ☒ Yes ☐ No

**115.89 (d)**

▪ Does the agency maintain sexual abuse data collected pursuant to § 115.87 for at least 10 years after the date of the initial collection, unless Federal, State, or local law requires otherwise? ☒ Yes ☐ No

**Auditor Overall Compliance Determination**

☐    **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒    **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐    **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

PS 5324.12, pages 56 & 57, address the mandates of this standard. The National PREA Coordinator reviews data compiled by each BOP complex and issues a report to the Director of the BOP on an annual basis. Complex data is maintained in locked files or on computer databases that are user ID and password protected. Agency PREA data is securely retained and is published on the BOP website after removing all personal identifying information. The report cover all data required in this standard and is retained in a file. Compliance with this standard was determined by a review of policy/documentation and staff interviews.

---

# AUDITING AND CORRECTIVE ACTION

## Standard 115.401: Frequency and scope of audits

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

### 115.401 (a)

▪ During the prior three-year audit period, did the agency ensure that each facility operated by the agency, or by a private organization on behalf of the agency, was audited at least once? (*Note: The response here is purely informational. A "no" response does not impact overall compliance with this standard.*) ☒ Yes   ☐ No

### 115.401 (b)

▪ Is this the first year of the current audit cycle? (*Note: a "no" response does not impact overall compliance with this standard.*) ☐ Yes   ☒ No

▪ If this is the second year of the current audit cycle, did the agency ensure that at least one-third of each facility type operated by the agency, or by a private organization on behalf of the

agency, was audited during the first year of the current audit cycle? (N/A if this is **not** the *second* year of the current audit cycle.) ☐ Yes  ☐ No  ☒ NA

- If this is the third year of the current audit cycle, did the agency ensure that at least two-thirds of each facility type operated by the agency, or by a private organization on behalf of the agency, were audited during the first two years of the current audit cycle? (N/A if this is **not** the *third* year of the current audit cycle.) ☒ Yes  ☐ No  ☐ NA

## 115.401 (h)

- Did the auditor have access to, and the ability to observe, all areas of the audited facility? ☒ Yes  ☐ No

## 115.401 (i)

- Was the auditor permitted to request and receive copies of any relevant documents (including electronically stored information)? ☒ Yes  ☐ No

## 115.401 (m)

- Was the auditor permitted to conduct private interviews with inmates, residents, and detainees? ☒ Yes  ☐ No

## 115.401 (n)

- Were inmates permitted to send confidential information or correspondence to the auditor in the same manner as if they were communicating with legal counsel? ☒ Yes  ☐ No

**Auditor Overall Compliance Determination**

☐ **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒ **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐ **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

This is the second PREA audit of this complex. The previous PREA audit was in June 2016. The auditor was allowed access to all areas of the complex and had access to all required supporting documentation.  The auditor was able to conduct private interviews with both inmates and staff. All BOP facilities have received at least one PREA audit since August 20, 2012.  The auditor was provided supporting documentation before and during the audit. Notifications of the audit (posted throughout FCC Terre Haute) allowed inmates to send confidential letters to the auditor prior to the audit.  Three letters from inmates were received by the auditor.

## Standard 115.403: Audit contents and findings

**All Yes/No Questions Must Be Answered by the Auditor to Complete the Report**

**115.403 (f)**

- ▪ The agency has published on its agency website, if it has one, or has otherwise made publicly available, all Final Audit Reports within 90 days of issuance by auditor. The review period is for prior audits completed during the past three years PRECEDING THIS AGENCY AUDIT. In the case of single facility agencies, the auditor shall ensure that the facility's last audit report was published. The pendency of any agency appeal pursuant to 28 C.F.R. § 115.405 does not excuse noncompliance with this provision. (N/A if there have been no Final Audit Reports issued in the past three years, or in the case of single facility agencies that there has never been a Final Audit Report issued.)  ☒ Yes  ☐ No  ☐ NA

**Auditor Overall Compliance Determination**

☐     **Exceeds Standard** (*Substantially exceeds requirement of standards*)

☒     **Meets Standard** (*Substantial compliance; complies in all material ways with the standard for the relevant review period*)

☐     **Does Not Meet Standard** (*Requires Corrective Action*)

**Instructions for Overall Compliance Determination Narrative**

*The narrative below must include a comprehensive discussion of all the evidence relied upon in making the compliance or non-compliance determination, the auditor's analysis and reasoning, and the auditor's conclusions. This discussion must also include corrective action recommendations where the facility does not meet the standard. These recommendations must be included in the Final Report, accompanied by information on specific corrective actions taken by the facility.*

FCC Terre Haute has fully implemented all policies, practices and procedures outlined in the PREA standards.  The auditor reviewed applicable standards and, through the review of supporting documentation, interviews with staff and inmates and the observation of physical evidence, concluded that this complex fully meets and substantially complies in all material ways with the PREA standards for the relevant review period.  BOP policies are directly tied to the PREA standards and staff expectations.  The complex's leadership is fully committed to

eliminating sexual abuse/sexual harassment, as evidenced in the realistic staffing analysis and the recommendations for enhanced supervision techniques. Substantiated allegations of abuse are processed in accordance with the standards, to include incident reviews, disciplinary actions, if required, and outcome notifications.

PREA training for staff and inmates is documented and all stakeholders receive the appropriate level of training and are knowledgeable of the intent of the PREA and the tools available to ensure prevention, detection, reporting and response to sexual abuse incidents. Sexual abuse and victimization propensity screening is well established and tracked in an organized fashion. Referrals for mental health counseling are integrated in the intake and allegations of sexual abuse processes. Medical networks for the inmates are established in the community. The public has access to reporting mechanisms and BOP PREA trends data via the BOP website. FCC Terre Haute currently meets all applicable PREA standards and no corrective actions are required.

| AUDITOR CERTIFICATION |
|---|

I certify that:

☒      The contents of this report are accurate to the best of my knowledge.

☒      No conflict of interest exists with respect to my ability to conduct an audit of the agency under review, and

☒      I have not included in the final report any personally identifiable information (PII) about any inmate or staff member, except where the names of administrative personnel are specifically requested in the report template.

## Auditor Instructions:

Type your full name in the text box below for Auditor Signature. This will function as your official electronic signature. Auditors must deliver their final report to the PREA Resource Center as a searchable PDF format to ensure accessibility to people with disabilities. Save this report document into a PDF format prior to submission.[1] Auditors are not permitted to submit audit reports that have been scanned.[2] See the PREA Auditor Handbook for a full discussion of audit report formatting requirements.

Diane Lee_____    May 29, 2019_____
**Auditor Signature**                                      **Date**

---

[1] See additional instructions here: https://support.office.com/en-us/article/Save-or-convert-to-PDF-d85416c5-7d77-4fd6-a216-6f4bf7c7c110 .

[2] See *PREA Auditor Handbook*, Version 1.0, August 2017; Pages 68-69.