# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| PATRICK R. SMITH and BRANDON S. HOLM, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> JEFFREY A. ROSEN, et al, ) <br> ) <br> Defendants. ) | No. 2:20-cv-00630-JMS-DLP |

### Third Declaration of T.J. Watson

I, T.J. Watson, declare the following:

1. I am currently employed by the Bureau of Prisons (BOP) as the Complex Warden at the Federal Correctional Complex located in Terre Haute, Indiana (FCC Terre Haute), a position I have held since November 11, 2018. I have been employed by the BOP in areas of increasing responsibility since 1995.

2. The statements I make hereinafter are made on the basis of my review of the official files and records of the BOP, my own personal knowledge, or on the basis of information acquired by me through the performance of my official duties. This declaration supplements the December 5, 2020 declaration (ECF No. 28-1), and December 7, 2020 supplemental declaration (ECF No. 33-1) I submitted in this matter.

3. The BOP, under the supervision of the United States Marshals Service, is responsible for implementing federal death sentences. See 18 U.S.C. § 3596(a); 28 C.F.R. Part 26.

4. Currently, executions of the following inmates are scheduled to occur on the following dates: Lisa Montgomery on January 12, 2021; Cory Johnson on January 14, 2021; and Dustin Higgs on January 15, 2021.

5. I am aware that Plaintiffs in this matter seek a preliminary injunction that postpones all executions at FCC Terre Haute until Defendants can demonstrate that the executions do not create a substantial risk that Plaintiffs and other inmates will contract COVID-19. (ECF No. 48).

6. I previously provided declarations in this matter detailing the COVID-19 related precautions put in place by the BOP generally, and FCC Terre Haute specifically. (ECF Nos. 28-1, 33-1).

7. Those precautions still remain in place. Additionally, the BOP and FCC Terre Haute have taken further steps to combat COVID-19.

8. The BOP is working with the Centers for Disease Control and Prevention (CDC) and a public-private partnership established by the federal government, known as Operation Warp Speed (OWS), to ensure the BOP remains prepared to receive the COVID-19 vaccine as soon as it becomes available. As of December 30, 2020, the vaccine had been delivered to multiple BOP facilities, including FCC Terre Haute. OWS helped determine priorities for vaccination, which BOP is currently implementing. Vaccinating staff and inmates protects staff members, inmates at the facility, and the community.

9. To date, FCC Terre Haute has provided the first round of the vaccine to 206 staff and 355 inmates, out of a total of approximately 709 staff members and 2228 inmates. The Plaintiffs were not among those inmates initially given the vaccination because they are not medically in a high risk category.

10. I am aware that Plaintiffs suggest several other precautionary measures, including testing all FCC Terre Haute staff members who will be assisting in the execution before they begin that work; requiring those staff members to quarantine for 14 days before returning

to their regular duties within the prison; and requiring testing of all visitors prior to participating in execution-related activities.

11. The BOP follows CDC guidance on screening and testing strategies. After extensive review of the most appropriate mitigation strategies, BOP concluded that requiring all staff to undergo entrance screening, socially distance as possible, wear face coverings when in close contact to others, and don additional appropriate personal protective equipment as warranted in a given environment were more effective and efficient strategies than mandating routine testing of all staff across the agency. Such routine testing would unnecessarily divert valuable testing resources away from other needed populations and, due to turnaround times for results, would be ineffective as a general screening tool. However, testing resources are available for all staff on a voluntary basis, through identification of community testing sites, individual institutional partnerships with local public health services, and - where local resources are less available - via a nationwide contract between the BOP and a national, high-volume testing laboratory.

12. To protect the safety of staff and inmates, FCC Terre Haute follows the procedures outlined in my prior declarations (ECF Nos. 28-1, 33-1), including requiring staff to wear masks, conducting temperature checks and COVID-19 screening, educating staff regarding the importance of staying home if they are feeling ill, requiring them to self-report any COVID-19 exposure (known or suspected) as well as any positive COVID-19 test, requiring staff to stay home in accordance with CDC guidelines if they test positive for COVID-19, and as much as possible, staff are being assigned to the same posts and are not rotating positions. Staff who are responsible for processing witnesses through security checkpoints during executions are required to wear fit-tested N95 masks, face shields, gloves, and surgical gowns.

13. Requiring FCC staff members who assist in an execution to quarantine for 14 days prior to returning to their regular duties would not be feasible. Approximately 70 or more FCC Terre Haute staff have functions related to execution events (as explained in prior declarations, most of the staff functions require only brief, if any, interaction between FCC staff and individuals from outside the FCC). Requiring that number of staff to quarantine for two weeks would severely reduce the ability of the institution to staff all necessary positions. This is especially true while the institution is on modified operations due to COVID-19. A reduction in staffing of the magnitude Plaintiffs suggest would further burden staff members, and potentially jeopardize the safety, security, and orderly operation of the institution. Many of the staff members who have functions related to execution events have specialized security related training. Their presence at the institution is crucial in maintaining institution security. For example, many of the staff responsible for administering temperature and symptom screening for individuals entering the grounds, are also medical staff at the institution. A requirement for those staff to quarantine for 14 days would undermine the ability of the medical department to meet the health and safety needs of the inmate population.

14. Moreover, requiring staff who work at executions to quarantine for 14 days does not seem particularly tailored to preventing the spread of COVID-19. There is no question that unfortunately COVID-19 has spread to both inmates and staff at FCC Terre Haute, despite the many precautions the BOP has taken. See data at https://www.bop.gov/coronavirus/. But throughout the country, prisons where executions are not conducted have experienced the spread of COVID-19, some of them with much higher numbers of cases than FCC Terre Haute. See https://www.bop.gov/coronavirus/. Additionally, the county in which FCC Terre Haute

is located is experiencing the increased spread of COVID-19[1], just like communities all over the country and world. As the Court noted in its December 8, 2020 Order Denying Motion for Preliminary Injunction, it appears much more plausible that staff and inmates at FCC Terre Haute are experiencing the spread of COVID-19 due to increase in community, rather than from execution events. ECF No. 37 at 14. Therefore, it would not be prudent or feasible to require a 14 day quarantine for FCC staff assisting in execution events.

15. Requiring testing of all visitors prior to an execution is also not feasible. Many visitors are traveling from out of town and arrive only shortly before an execution, thus not allowing time for lab testing. Some visitors are legal or spiritual advisors, as well as members of the media and witnesses whose presence is authorized by 28 C.F.R. § 26.4. Therefore, rather than imposing testing requirements on such individuals, precautions are taken as described in my prior declarations (ECF Nos. 28-1, 33-1), including administering temperature checks and COVID-19 screening; requiring masks and providing them if a visitor does not have one; providing full personal protective equipment (PPE) to include face shields, gowns, and gloves if desired; where possible, practicing social distancing, consistent with CDC guidelines.

---

[1] See https://oig.justice.gov/coronavirus. By selecting "visit dashboards" then the "facility case trends" tab, and using the scroll function to select a specific BOP institution, the user can find a graph showing the number of inmates or staff with lab-confirmed and open cases at a particular complex or facility on a particular day. This website cites the aforementioned BOP website as the source of this data. The website also provides a graph reflecting the total number of individuals reported by the county where the BOP facility is located as having a confirmed COVID-19 case.

I declare, under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct. Executed this 4 day of January, 2021.

_____
T.J. Watson
Federal Bureau of Prisons